## Samuel Matteson v. The People of the State of Illinois ex rel. Louise Kothe.

### Gen. No. 4,516.

1. BASTARDY—*when instruction in prosecution for, erroneous.* Held, under the proof in this case, that an instruction which told the jury that the precise date of conception was not material, was erroneous.

2. BASTARDY—*when conviction in prosecution for, set aside.* A conviction of bastardy will be set aside where the question of paternity was contested and the case of the prosecution rested solely upon the testimony of the complaining witness, which was rebutted by the defendant's denial, corroborated to an extent by medical testimony, where the reputation of the complaining witness for truth and veracity was impeached, and such impeachment in nowise contradicted.

Prosecution for bastardy. Appeal from the County Court of McHenry County; the Hon. ORSON A. GILLMORE. Judge, presiding. Heard in this court at the April term, 1905. Reversed and remanded. Opinion filed August 1, 1905.

V. S. LUMLEY and CHARLES B. HAZLEHURST, for appellant.

JAMES F. CASEY and D. T. SMILEY, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.
On June 22, 1899, a warrant was issued by a justice of

the peace of Kane county for the arrest of Samuel Matteson in a bastardy proceeding begun upon the complaint of Louise Kothe. The cause reached the County Court, and the venue was charged to the County Court of McHenry County, where a jury trial in December, 1904, resulted in a verdict and a judgment against defendant, from which he prosecutes this appeal.

The child was born August 13, 1899. When it was begotten and born, the complaining witness lived with her father, and defendant lived some three-quarters of a mile distant with his father. Both were farmers. There had been no intimacy between the complaining witness and the defendant, nor did their families neighbor with each other. Defendant had been upon her father's place but twice. The first time was with a lot of threshers, and for only a few hours, and there was no opportunity for intercourse. The second time defendant went there to buy a turkey of her father, and did buy and pay for it. It was in winter. Her father was ill, and the only other male person about the place was a boy ten years old; and at the father's request defendant cut some firewood, cut hay and straw in the stacks, got it into the stables to feed the horses and cows, and tried to clean out the stables, but failed because the manure was badly frozen. This was in the afternoon. Miss Kothe went to the stables with defendant and did part of the chores. She testified the intercourse took place while they were at work in the cow stables, and that that was the only time defendent ever had intercourse with her. Defendant admitted being there and buying the turkey and assisting about the chores, but denied that he then or ever had sexual intercourse with her, and denied the conversation she detailed which led up to the act, and the conversations which she alleged took place that day after the act and on another later day.

For reasons hereafter appearing it became material when this interview at the stable took place. The complaining witness, who has been married three years and is now Mrs. Linde, testified that this intercourse took place some day

after January 8, 1899; about two weeks after; not three weeks after; about three weeks after; inside of two weeks after January 8th; that January 8th was her last period of menstruation until after the girl was born; that she told defendant at the time of the intercourse that she could tell in a week whether she was in the family way; that she thought she could tell in a week by the recurrence or omission of her monthly period; that this intercourse took place within a week of her monthly period and must have been in February; that it was within a week of February 8th; that before the justice of the peace she thought she fixed the date at February 8th; that she had her last monthly period on January 8th, and that the time she had intercourse with defendant was within a week of her next monthly period. Defendant and his father testified that before the justice the complaining witness fixed the date of the intercourse as February 4th, and as Saturday in the first week in February, which the calender shows was February 4th. Defendant testified that when the complaining witness was examined before the justice as to the date of the intercourse she fixed it at Saturday the first week in February; that the justice produced a calender, and an attorney in the case said that was February 4th, and that she then said it was. It was proved without objection that before the justice the father of the complaining witness (since deceased) testified defendant came and bought the turkey on February 4th. Defendant and his father both testified defendant was not at that place on February 4th, and that he bought the turkey on February 11th, and defendant testified he made a record of all his expenditures, and knew from that that he bought this turkey on February 11th.

There was medical testimony that the ordinary period of gestation for human beings is from 275 to 280 days. This child was born without the attendance of a physician and there was no proof as to its condition at birth except the fact that it lived and was alive at the trial, over five years later. If this child was carried the usual period it was conceived about November 5 or 10, 1898. Four physi-

Matteson v. The People.

cians testified that if a child was conceived within a week before February 8th and born August 13th following, it was almost impossible that it should live beyond a day or two, at least without artificial incubation or other like assistance. If a child born August 13th had been conceived about January 8th, they evidently considered its chances of living better but still not good. The birth of this child may have been hastened by a fall its mother had six days before its birth, but that decreased rather than increased the chances that the child would live, if its birth was premature. It must be regarded as established for the present hearing that when this matter was fresh in the recollection of the prosecuting witness, and at a time when she did not know when the child would be born, she fixed the date when defendant bought the turkey and had intercourse with her at February 4th, and the evidence strongly tends to show that the date when defendant bought the turkey was February 11th, and the date of the purchase of the turkey is the only time she claims he either had intercourse with her or the opportunity. It will, therefore, be seen that the proof raises very serious doubts whether defendant can have been the father of this child, even if he had sexual intercourse with her on the day he was at her father's home, bought a turkey and helped about the chores.

In this state of the proof the court instructed the jury at the request of the prosecutor that the precise date of the conception of the child was not material. This was very misleading as applied to the proof in this particular case. If defendant was the father of the child, then the precise date of the conception was immaterial; but in determining whether he was its father, it was very material whether it was conceived on the day when he bought the turkey and did the chores at the stable, for if it was not conceived on that day then he was not its father. This instruction was well calculated to lead the jury to disregard this most material feature of the defense.

Seven witnesses testified that the reputation of the complaining witness for truth and veracity was bad, and that

judging by that reputation they would not believe her under oath. Some of these witnesses had had trouble with her father or the family, but the majority of them appeared impartial. No attempt was made to sustain her reputation in that respect. When we consider that the prosecutor had the burden of establishing the paternity of the child by the greater weight of the evidence; that her case rests solely upon her own testimony; that defendant's denial seems as worthy of belief as her testimony; that she was impeached by her neighbors; and that the medical testimony makes it very unlikely that this child was begotten at the only time when defendant had an opportunity to have sexual intercourse with the complaining witness, we are led to the conclusion that the ends of justice require another trial.

Complaint is made of language used during the trial and before the jury by one of the attorneys for the prosecution. One attorney on each side used language about his opponent that was not proper to be used in a fair judicial trial, and which ought not to have been permitted by the court. Where such vituperation by opposing counsel is permitted, the administration of justice is likely to be thereby brought into disrepute.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*