The People of the State of Illinois ex rel. Mae Oemke, Appellee, v. Harry Schuring, Appellant.

Gen. No. 9,029.

Opinion filed January 15, 1937.

STEELY, STEELY, GRAHAM & DYSERT, of Danville, for appellant; WALTER V. DYSERT, of counsel.

V. W. McINTIRE, of Danville, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court..

This is an appeal by Harry Schuring, appellant, from a judgment of the county court of Vermilion county adjudging him guilty of bastardy.

The judgment from which the appeal was taken was rendered upon a second trial of said cause. At the first trial the jury by their verdict found appellant guilty and the court set aside the verdict and granted a new trial.

Several errors are assigned for a reversal of the judgment of conviction, among which are: The judgment is contrary to the manifest weight of the evidence, and that the court erred in refusing to grant a

new trial because of newly discovered evidence presented on the hearing of the motion for a new trial. The foregoing being the only reasons argued for a reversal of the judgment we will not consider the other causes assigned.

The record discloses that Mae Oemke, the relatrix, was a single woman who had been married and whose husband, Harry Oemke, had died on April 25, 1932. She became acquainted with appellant on September 20, 1933, having met him in her home. He came there with two of her girl friends. She saw him every night after that up until about August 23, 1934, when he quit coming. She went to the World's Fair at Chicago with him. He asked her to marry him. She was at his mother's quite frequently. She informed him of her condition, and he said that he would go ahead and take care of her and see her through with it. After that he kept going to see her until August 23, 1934. She did not see him after that but talked to him over the phone and asked him why he did not come to see her any more, and he said it was on account of his mother, that she set her foot down and he could not come.

Appellant denied that he was guilty and testified that the relatrix had paid for the trip to the World's Fair. He did not deny that relatrix informed him of her condition and that he said to her he would take care of her and see her through with it, and that he continued to visit her until August 23, 1934. He also contended that he had an operation and had been sterilized and for that reason it was impossible for him to beget children.

On the first trial of the cause John W. Blair, a physician and surgeon of Harvey, Illinois, testified on behalf of the defendant and, by stipulation of the parties, his testimony given at that trial was read in evidence and treated and considered as evidence of the doctor the same as if the doctor was present and under oath gave the testimony.

He testified that he knew the defendant, Harry Schuring; that he performed an operation for the defendant which was primarily for a large ventrical hernia, following a previous operation for a pus appendix. Before going into the operating room he asked me that morning, in the presence of Dr. Frank Van Wormer my assistant, if it would be possible to sterilize him. I told him yes, and, if he wished, we could do so. I advised him how it was done and told him there was no gravity. After the repair of the post operative ventrical hernia I tied off both the right and left vasa entirely. The medical term, applied to that kind of an operation, is sterilizing. The purpose of the operation is to make it impossible for the person to have children. Both vasa were divided by the ligatures and separated. I would say the effect of that operation was sterilization. Impossible to beget children. From a scientific standpoint, and to a reasonable degree of medical certainty, that is the effect upon this particular patient. He entered the hospital on February 11, 1924, and was operated on at 8:30 the 12th day of February, 1924. On cross-examination the witness testified: That just before we went into the operating room that morning he talked to me about a sterilization operation and requested me to sterilize him; didn't give any reason why he wanted to be sterilized. Performed this sterilization operation myself. I have forgotten the girls who were in the operating room at the time, because they change from time to time; but my first assistant was Frank Van Wormer; not sure where he is now, but believe he is in Aurora, Illinois. To my knowledge, never knew this kind of an operation to fail to accomplish the purpose.

Dr. Taylor W. Funkhouser, a witness on behalf of plaintiff and who was the physician in attendance at the birth of the child, was recalled as a witness in rebuttal. He testified that he heard read the testimony

of Dr. John W. Blair; that an operation performed on a man by tying off both the right and left vasa, commonly known as a sterilization operation, would not necessarily prevent a man from begetting a child. A simply tying off would obstruct that tube for the time being; if that is absorbed, the tube would re-establish itself. On cross-examination to the question: Sterilization, then, is not a perfect operation? His reply was: Well, not done by that method, no. It can be made a perfect operation, but it wouldn't be by that method. The operation performed was just tying the cord.

On the motion for a new trial the affidavit of Dr. John W. Blair was presented, in which he described specifically the operation performed, and which materially differed from his testimony given on the trial. The affidavit was in part as follows:

Each vas deferens was identified, separated from tissue about same, ligated in two places approximately one inch apart. The vas was then divided between these two ligatures with a small section, approximately three-eighths inch being removed. Ligature used was 10-day number "0" standard chromic catgut.

An affidavit by Dr. J. M. Fisher was also presented on the motion for a new trial, in which he deposes that he read the affidavit of Dr. John W. Blair and that to a reasonable degree of medical certainty, from a scientific standpoint, basing his opinion upon the matters related in said affidavit, he is of opinion, assuming said matters therein set forth to be true and the manner in which said operation was performed as therein described, that it would produce sterilization of said patient.

The affidavit of Anna Schuring, mother of appellant, was also presented on said motion for a new trial, in which the affiant seeks to corroborate appellant as to his testimony that relatrix had taken him to the

World's Fair and as to other matters not material to the issue.

The affidavit of appellant was also presented on said motion, in which he stated that he had read the affidavit of Dr. John W. Blair as to the manner and technique of the operation covered by said affidavit, and that the new details of said operation contained in said affidavit are details of fact of which he had no knowledge and constitute newly discovered evidence of which he was not aware until reading this affidavit today.

We are of opinion that the court did not err in refusing to grant appellant a new trial on the ground of newly discovered evidence. The rule uniformly followed in this State is that a new trial will not be granted on the ground of newly discovered evidence unless it is shown that the evidence could not have been produced on the trial by the use of reasonable diligence, and it must also be shown that the newly discovered evidence is reasonably certain to result in a different verdict. (*People v. Blanch,* 309 Ill. 426.)

The only showing in the record as to the use of any diligence on the part of appellant to produce the evidence on the trial is his affidavit, which is not sufficient to establish the fact that appellant used reasonable diligence.

Appellant complains because the court permitted Dr. Funkhouser to testify, and says that the same was not offered until rebuttal in the second trial and then without any notice and at a time when appellee knew that Dr. Blair could not be called to meet the testimony of Dr. Funkhouser. That when the stipulation was made to read the evidence given by Dr. Blair on the first trial, no surprise evidence should have been sprung in rebuttal which would require Dr. Blair's presence in court to meet it.

It is insisted by appellant that because of the fact that he was operated upon by Dr. Blair on February 12,

1924, and sterilized that the judgment is contrary to the manifest weight of the evidence, and that therefore the judgment should be reversed and the cause remanded.

It was incumbent upon appellant to prove by a preponderance of the evidence not only that Dr. Blair performed such operation but also that, as a result thereof, he was unable to beget a child. If appellant was content to rest the proof of such facts solely upon the testimony of Dr. Blair he cannot now complain. Appellee had the legal right to call witnesses not only to disprove the contention of appellant that an operation had been performed by Dr. Blair but also that such operation would not necessarily prevent a man from begetting a child. The fact that the testimony of Dr. Blair, given at the first trial, was read in evidence by agreement of the parties would in no way change the rules of evidence.

Dr. Blair was called as a witness by appellant to establish the fact that an operation had been performed and to give his professional opinion as to the result of such operation, and had he been present in court he could not have been recalled to meet the testimony of Dr. Funkhouser, as contended for by appellant, nor could he have been recalled to testify more in detail as to just what was done by him in performing the operation. Appellee called Dr. Funkhouser to show that in his opinion the result of the operation was not as contended for by appellant.

After a careful consideration of the evidence we are of opinion that the jury was warranted in finding that appellant was the father of the child. The judgment of the county court of Vermilion county is affirmed.

*Judgment affirmed.*