2 Ill. App.3d 1057 (1971)
278 N.E.2d 124
NANCY F. KERZ, Plaintiff-Appellant,
v.
HATTIE ARKIN, Defendant-Appellee.
No. 54946.
Illinois Appellate Court  First District.
November 18, 1971.
*1058 James N. Vail, of Chicago, for appellant.
Garbutt & Jacobson Associated and Michael F. Maloney, both of Chicago, for appellee.
Judgment affirmed.
*1059 Mr. JUSTICE DEMPSEY delivered the opinion of the court:
The plaintiff, Nancy Kerz, was driving out of a restaurant parking lot about 6:15 on an evening in November 1967, when her Buick automobile collided with the car of the defendant, Hattie Arkin, which was being backed out of a parking place. Miss Kerz sued for personal injuries and property damage. A jury returned a verdict against her and, in a special interrogatory, found her guilty of negligence which proximately contributed to the collision.
Judgment was entered on the verdict and Miss Kerz requests reversal. She asserts that the trial court erred in denying her motion for a directed verdict because Mrs. Arkin was negligent as a matter of law and that the verdict was contrary to the manifest weight of the evidence. She also complains of trial errors and requests, in the alternative, remandment for a new trial.
Miss Kerz testified that she was driving her auto in an exit lane at four to five miles an hour. She was in the center of the lane and cars were parked on both sides of her perpendicular to the lane in which she was traveling. The evening was dark and her lights were on. She said when she saw the red rear lights go on of a car which was parked to her left and two car widths ahead, she honked her horn in warning. She did not stop or slow down but watched the car until shortly before the accident. She stated that when the front of her auto was slightly beyond the middle of the car it suddenly backed out from between two other parked cars and struck the left door of her auto; that her left arm hit the auto's arm rest and her elbow was permanently injured. She said she became aware of her injury the following morning when she awoke. Later, when she lifted a coffee cup it fell out of her hand. She consulted Dr. Gerald McCabe, who x-rayed her hand and arm and put her hand in a sling. That afternoon she went to the Lincolnwood police station to report the accident.
Mrs. Arkin, who had had dinner with her sister at the same restaurant, testified that she turned on her lights and started to back out slowly from her parked position, releasing her brakes gradually after first looking and seeing nothing to her left or behind her. She was not moving at more than one or two miles an hour when suddenly "out of nowhere there was a car" and her car bumped into Miss Kerz' auto. She said Miss Kerz was driving without lights and did not honk her horn. She inspected Miss Kerz' auto and saw that its headlights were not on and that its left door was dented. Miss Kerz said she was not hurt but was concerned about the damage to her auto because she had been in another accident. Mrs. Arkin said she was sorry at what happened and offered to pay for the damage. Miss Kerz accepted the offer and telephoned Northwest Buick *1060 to see if its service department was still open. Miss Kerz drove her auto there and Mrs. Arkin rode with her sister whose car was also parked in the lot. At the dealer's the damage was estimated at $100.00. At Mrs. Arkin's request her sister wrote a check for this amount to Northwest Buick to pay for the necessary repairs.
At the close of all the evidence the plaintiff made a motion for a directed verdict. The motion was denied and properly so. The conflicting testimony of the two witnesses to the collision brought their credibility into question. Miss Kerz said her headlights were on; Mrs. Arkin said they were not. Miss Kerz said she blew her horn; Mrs. Arkin said she heard no sound. Miss Kerz said Mrs. Arkin bolted out of her parking place; Mrs. Arkin said she moved very slowly. Miss Kerz said she was behind the parked car when it started to move; Mrs. Arkin said Miss Kerz was not in sight. Miss Kerz said she did not telephone Northwest Buick; Mrs. Arkin said she did. Miss Kerz said Northwest Buick had not been paid for the damage to her auto; Mrs. Arkin said it had. Miss Kerz' testimony that she did not stop or slow down after she saw the back lights of the parked car go on, could be construed as an admission of negligence. Mrs. Arkin's willingness to pay for the damage to Miss Kerz' auto, could be construed as an admission of fault. All these differences raised questions of fact which were properly submitted to the jury. The evidence and the inferences from the evidence when viewed most favorably to Mrs. Arkin did not so overwhelmingly favor Miss Kerz that a verdict contrary to her could never stand.
The plaintiff's argument that Mrs. Arkin was guilty of negligence as a matter of law is premised upon the proposition that a motorist who backs up without ascertaining what is behind him is negligent. The argument assumes Mrs. Arkin's guilt. The proposition is applicable only if Mrs. Arkin's testimony is rejected and Miss Kerz' accepted in its entirety.
Miss Kerz' credibility was considerably impaired by the end of the trial and the jury had reason for discounting her testimony. The police officer to whom she reported the accident testified that she told him she had not been injured and that she did not see Mrs. Arkin's car until the two cars collided. Miss Kerz' denial of any payment being made for the damage to her auto was refuted by the introduction into evidence of the cancelled check for $100.00 endorsed by Northwest Buick. Her testimony about being out of work for six months after the accident was contradicted by evidence that she was employed in January, February, March, April and May 1968. After saying she worked for one company for a month and a half, she acknowledged being employed for three months. After testifying she could do no typing, she admitted having done typing for two employers.
*1061  1-5 Whether or not a particular set of facts presents reasons for finding negligence as a matter of law is for the determination of the trial court. (Murad v. Witek (1964), 48 Ill. App.2d 137, 199 N.E.2d 809; Grill v. Bradley (1959), 22 Ill. App.2d 535, 161 N.E.2d 347.) If the evidence is not overwhelmingly one-sided, but requires the weighing of conflicting testimony or permits the drawing of different inferences, the issues are for the jury to decide. It is the function of the jury as a fact-finding body to resolve conflicts in evidence and to make the ultimate determination of liability. (Snyder v. Black (1964), 53 Ill. App.2d 327, 203 N.E.2d 1.) The court did not err in denying the plaintiff's motion for a directed verdict. Furthermore, the jury's verdict and answer to the special interrogatory were not contrary to the manifest weight of the evidence.
The alleged trial errors pertain to the testimony of the police officer, the testimony concerning the payment of damages and the testimony of a doctor who testified for the defense.
 6, 7 The officer had no independent recollection of his conversation with Miss Kerz. He knew only what was in his written report of the conversation, which he brought to court. He looked at the report, refreshed his recollection and then testified. The plaintiff insisted that he was testifying from the report and moved to strike his testimony. The motion was denied and the plaintiff asserts this was error. The officer was directed by the trial judge to examine the report; he was asked if he was testifying from the report and he replied under oath that he was testifying from his recollection as based on his original report. The manner and mode of refreshing a witness' memory and the reliability of the means of doing so rests largely within the discretion of the trial judge. There was no error in allowing the officer to refresh his recollection by examining his report and none in refusing to strike his testimony.
The plaintiff, in an answer to a motion to admit facts, in open court and in chambers, objected to any reference to the transaction with Northwest Buick. She contended that the purpose of this testimony was to prove the satisfaction of her claim and that this was an affirmative defense not raised in the defendant's pleadings.
 8 The issue of damage to the plaintiff's auto was squarely raised by her complaint. She claimed that her auto was damaged and that she had been deprived of its use and had expended a large sum of money to have it repaired. The defendant's answer denied these allegations. Thus, the pleadings presented the issue and the court was correct in ruling that the testimony and the check were admissible on the question of property damage.
 9 The plaintiff's physician, Dr. McCabe, stated that he was a graduate of an osteopathic school of medicine and was a general practitioner *1062 licensed by the State of Illinois to practice medicine in all its branches. He diagnosed Miss Kerz' alleged injury as a tardy paralysis of the ulnar nerve; he outlined the examinations he gave her and treatments he prescribed for her. Dr. Leonard Smith, an orthopedic surgeon, testified in behalf of the defense as a non-examining expert. He was of the opinion that if there was an injury it could not have been a tardy nerve paralysis. Although he disagreed with Dr. McCabe's diagnosis and treatment, he praised him as his friend and said he was an honorable gentleman, a qualified medical practitioner and a very good osteopathic physician. In response to the question, "What is an osteopath?", Dr. Smith replied:
"It's a separate branch of medicine from even general medicine. They treat by medical means as well as physical therapeutic means; that is, massage, heat, and things like that, and manipulation. It's a separate school. It's not a regular medical school, but they are licensed under a separate act in the state."
The attorney for the plaintiff objected and a conference was held in chambers. He stated there were different theories of medicine and osteopathy was one of them, but that there was only one medical practice act in Illinois and Dr. McCabe had the same license to practice medicine as Dr. Smith. He protested that Dr. Smith's answer conveyed the impression that Dr. McCabe graduated from an inferior school and was not licensed as a physician and surgeon. After some discussion, the defendant's counsel withdrew the previous question and the jury was so informed.
The plaintiff argues that the implication in Dr. Simth's answer about Dr. McCabe's school was prejudicial and his statement about his being licensed under a different act was inaccurate; and that these errors, together with the other trial errors, deprived her of a fair trial. First, there were no other trial errors; second, the purported implication is exaggerated and third, the statement, although inaccurate, was not belittling. Dr. Smith had a high regard for Dr. McCabe which was expressed in the presence of the jury. He in no way intimated that Dr. McCabe was without proper medical qualifications. The plaintiff was not prejudiced by his testimony.
The judgment is affirmed.
Judgment affirmed.
McNAMARA, P.J., and McGLOON, J., concur.