THE PEOPLE *ex rel.* CYNTHIA SUE RAINES, Plaintiff-Appellee, *v.* BYRON EDWARD PRICE, Defendant-Appellant.

Fourth District   No. 13240

Opinion filed May 6, 1976.

C. William Fechtig, of Fechtig & Sutton, of Carmi, and Paul L. Pratt, of Pratt, Kardis, Pierce & Bradford, Ltd., of East Alton, for appellant.

Norbert J. Goetten, State's Attorney, of Carrollton (G. Michael Prall and Robert C. Perry, both of Illinois State's Attorneys Association, of counsel), for appellee.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

Defendant appeals from the judgment of the trial court in this paternity action finding him to be the father of complainant's child. Defendant also appeals from the denial of his motion for a new trial based on newly discovered evidence.

The first issue is whether the finding is against the manifest weight of the evidence. This requires a review of the evidence.

Cynthia Sue Raines testified she first became acquainted with defendant in March 1969. At that time she was living with her mother and stepfather in a tenant house on a farm owned by defendant and his father. She testified that on their third meeting, they had sexual relations. She further testified that between April 1969, and October 1970, they had intercourse 49 times. She recalled the number of acts by refreshing her memory by referral to a diary which she began keeping in January 1969. She testified that she numbered each act in her diary next to the date it occurred.

She testified that all of the acts except the first until January 1970 took place in a hayloft in a barn located 100 feet from the tenant house. Defendant kept livestock in the barn and complainant would join defendant there when he stopped by to care for the livestock. After January 1970, when her family moved from the house, the acts took place in defendant's car on a country road.

Complainant testified that she had not had intercourse with anyone else between September 1, 1970, and December 31, 1970. Her last menstrual period was in early October 1970. She testified that she had intercourse with defendant on October 6, 17 and November 14, 1970. On November 14 she told defendant she thought she was pregnant as she had missed her menstrual period in November. On July 12, 1971, she gave birth to a son. She saw defendant in June, July and August of 1971. She testified that on one of those occasions defendant promised to give her money if she did not name the child after him (which she did not.) Defendant never denied to her that he was the father of the baby.

At defendant's request, Cynthia wrote two notes and gave them to him. The contents were essentially the same. Both were to the effect that she had never had intercourse with defendant and the baby was not his. The first was dated February 1971 (before the birth) and the second December 25, 1971 (after the birth). Complainant acknowledged writing the notes of her own free will, although at defendant's request. She testified that she wrote them because she "didn't want to lose him" and that the statements were not true.

Complainant's stepfather testified that defendant and/or his father would be at the barn every day to feed livestock and that Cynthia went out quite often when defendant was there. When she returned in half an hour or an hour she would say she had been out with defendant. He himself had never actually observed the two in the barn.

Defendant, Byron Price, testified that he would go to the barn once or twice a day and several times the girls (complainant and her sisters) would come over. He had never had sexual relations with complainant. He first learned that he was being accused of paternity around Christmas 1970. A friend, Mrs. Dorks, called to say Cynthia had called her to say she was pregnant and was going to blame defendant. Defendant testified that he asked Cynthia to write the notes of February and December 1971, but that she did it of her own free will.

Mrs. Dorks testified that complainant called her in December 1970 to tell Mrs. Dorks she was pregnant and was going to blame Price although he was not the father. Mrs. Dorks also testified she was a good friend of Price's, that she had never talked with Cynthia Raines prior to the phone call and that Cynthia said she called Mrs. Dorks because Mrs. Dorks was a good friend of Price's. Cynthia denied making such a call.

Richard McCollum testified that he attended a party in a deserted house on October 20, 1970. He and three male friends at that time each had intercourse with complainant and her sister Gloria. He testified that Cynthia and Gloria had reputations for being easy to pick up. Both Cynthia and her sister Gloria testified that no such event occurred. The trial judge, as trier of fact, found that defendant was the father.

■■ Defendant acknowledges the rule of law that the reviewing court will not reverse unless the findings of the trier of fact are against the manifest weight of the evidence. *People ex rel. Lyke v. Rucker*, 2 Ill. App. 3d 113, 276 N.E.2d 139.

In a paternity action, the burden is on the mother to establish paternity by a preponderance of the evidence. This does not depend on the number of witnesses for each side, but depends on the weight to be afforded to the witnesses' testimony. That, of course, is a matter of credibility for the trier of fact. *Rucker*.

Defendant argues that complainant's testimony is so incredible as to be unbelievable. He points to the testimony that Cynthia kept a diary where she recorded every act of intercourse, and that she had no independent recollection of the first act.

Defendant argues that it is incredible that complainant should so conveniently have this diary. As the State points out a diary must begin sometime and Cynthia testified she started it in January 1969 (prior to meeting defendant) when her stepfather gave her some blank books. The record reveals that complainant independently recalled she first had

924

intercourse with defendant in his car the second time he drove her to town. The only specific recollection refreshed by the diary was the exact date of that occasion and it is not unbelievable that she would not independently recall the exact date.

■■■ Defendant points to the testimony of Mrs. Dorks and Richard McCollum which support his denial of paternity. However, complainant denied their testimony. The question is purely one of credibility which is, of course, for the trier of fact. The fact that there was testimony that other men had had intercourse with complainant during the period of conception is not determinative. (*People ex rel. Gerard v. Wilson*, 22 Ill. App. 3d 331, 317 N.E.2d 170.) The testimony of the complainant, if believed, is sufficient to support a finding of paternity. (*Wilson.*) An appellate court will reverse a trial court on a question of fact only if it is clearly convinced that the result is palpably and manifestly erroneous. (*People ex rel. Staples v. Prude*, 18 Ill. App. 3d 269, 309 N.E.2d 670.) In the case at bar, the witnesses directly contradicted one another. We will not disturb the trial court's resolution of the issue of credibility.

Following the entry of the order finding defendant to be the father, in March 1974, defendant filed a motion to set aside the judgment and for a new trial, in November 1974, based on newly discovered evidence. The evidence consisted of two letters, admittedly written by Cynthia to the defendant's attorney and to a circuit judge, in which she said she had been mistaken at trial and that she had had intercourse with other men during the period of conception.

A hearing was held on the motion. Cynthia testified that, she wrote the letters at the request of defendant because he told her he would give her $500 to drop the charges and told her she could prove her love for him by doing this. She stated that the letters were false and her testimony at trial true.

Defendant denied that he had had any contact with Cynthia since the trial and particularly denied contact on the dates Cynthia testified they had met to discuss and to write the letters. Cynthia's mother and two nephews testified that they saw defendant pick up Cynthia at her house on two occasions in November 1974. They testified that, although it was night, they identified him by the light of the dome light which went on when Cynthia got into the car. Defendant testified that the door which they testified Cynthia used, did not operate the dome light, and had not for two months.

■■ Defendant argues that it was an abuse of discretion to deny a new trial on the basis of this newly discovered evidence. The grant or denial of a new trial is within the sound discretion of the court and will not be interfered with unless it appears that the discretion has been abused. Applications for a new trial because of newly discovered evidence are not

looked upon with favor. (*Hearst v. City of Chicago*, 9 Ill. App. 3d 1085, 293 N.E.2d 738.) Among other factors, the evidence must be of a conclusive nature and not merely cumulative. (*Hearst.*) The trial judge who heard the motion was the finder of fact in the original trial. The letters were examined by the court. There exists a similarity between these letters and the notes Cynthia wrote for defendant at his request before trial. At trial the trier of fact found Cynthia's explanation for the notes credible. Under these circumstances it cannot be said that the conclusion of the trial court that this evidence did not warrant ordering a new trial was a manifest abuse of discretion.

The third issue argued by defendant is that it was error to allow complainant to refresh her memory by reference to her diary. Defendant also argues that it was error for the trial court to examine the diary when it was not admitted into evidence.

■■ The rule is that the manner by which a witness will be permitted to refresh his or her memory is within the sound discretion of the court. (*Kerz v. Arkin*, 2 Ill. App. 3d 1057, 278 N.E.2d 124.) We find that the record does not support defendant's contention that Cynthia was testifying solely by reference to the diary and not from an independent recollection. From the record, it appears that reference was made mainly for the purpose of ascertaining specific dates and not for the occurrence of the events themselves. Defense counsel examined the diary and cross-examined Cynthia concerning it. It was within the discretion of the court to permit this.

Defendant also contends that it was improper for the court to examine the diary since it was not in evidence. First we note that the record does not show that the judge examined it. At the beginning of the trial he stated that he would, whether or not it was in evidence. However, at the close of the evidence the court stated that the diaries were impounded by the circuit clerk with the understanding that the judge would not examine them until further conversation with the lawyers. The record does not show a further conversation on the matter. In any case, it is well settled that, where the judge is the trier of fact, it will be presumed that he considered only admissible evidence. *People ex rel. Bucaro v. Johnson*, 8 Ill. App. 3d 618, 291 N.E.2d 9.

Accordingly, for the reasons stated above, the judgment of the circuit court of Greene County is affirmed.

Judgment affirmed.

TRAPP, P. J., and GREEN, J., concur.