THE PEOPLE *ex rel.* VIVIAN R. ADAMS, Plaintiff-Appellant, *v.* LOUIS E. KITE, Defendant-Appellee.

Fifth District   No. 76-474

Opinion filed May 13, 1977.

Thomas Benedick, of East St. Louis, for appellant.

Mark Kruger, of Land of Lincoln Legal Assistance Foundation, Inc., of East St. Louis, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

This is an appeal from a judgment entered on a verdict directed for defendant-appellee Louis E. Kite in a paternity suit instituted by plaintiff-appellant Vivian R. Adams in the Circuit Court of St. Clair County under section 4 of the Paternity Act (Ill. Rev. Stat. 1975, ch. 106¾, par. 54).[1] The issue at trial was whether defendant was the father of plaintiff's child born out of wedlock, and thus liable for support. See Ill. Rev. Stat. 1975, ch. 106¾, pars 51-53, 56.

Plaintiff testified that she met the defendant in March 1973 when she began work as a nurse's aid at a nursing home in Belleville where he was an orderly. They had two unconsummated sexual encounters, in June and October of 1974, prior to plaintiff's alleged impregnation; defendant ejaculated on one occasion, but on neither occasion did a completed act of intercourse take place. On December 13, 1974, the event occurred which allegedly resulted in plaintiff's becoming pregnant. As she described it:

> " * * * [H]e put his penis between my legs but I had my legs closed. He couldn't put it inside my vagina and he moved up and down and then he ejaculated and his penis was right close to my vagina.

---

[1] Section 4 provides in pertinent part that "[i]f the woman is * * * a recipient of assistance as defined in Section 2—6 of 'The Illinois Public Aid Code', approved April 11, 1967, as amended [Ill. Rev. Stat. 1975, ch. 23, par. 2—6] * * * she may request the Department of Public Aid to file a complaint in her behalf under this Act. * * * The Department shall refer her complaint to the Public Aid Claims Enforcement Division of the office of the Attorney General as provided in Section 12—16 of the Illinois Public Aid Code [Ill. Rev. Stat. 1975, ch. 23, par. 12—16] for enforcement by the Attorney General. Upon such request the Attorney General shall file a complaint in her behalf * * *." Vivian Adams is referred to as "plaintiff" throughout this opinion.

Q. And he ejaculated on you?

A. Yes.

Q. And where the sperm go?

A. In my vagina.

Q. What general area?

A. And part of his ran down onto the bed."

She testified that she then fell asleep without cleansing herself. Under further questioning by her counsel, plaintiff repeated that defendant did not penetrate her, but that semen fell upon her vaginal area.

She concluded that her pregnancy, which she discovered on January 29, 1975, resulted from the act of December 13 "[b]ecause he was the only one I had been with sexually, you know, involved in sex and that. * * * I had went out with this other man in January, but we didn't do anything." In February she informed the defendant that she was pregnant. She was asked what defendant's reaction to this information was, but her answer, at least as reflected in the record, is difficult to comprehend: 'He didn't believe that, you know, if I was that he would marry me when it showed." She testified that she later showed defendant a photograph of the child and "he said that the baby looked like him and that it was his and he asked for the picture."

On cross-examination, plaintiff testified that at no time had defendant ever put his penis inside her vagina. She stated that she had started to keep track of the onset of her menstrual periods because "[i]t would be possible that sometime I would have sexual intercourse with him [the other man] and that I wanted to keep track in case I thought I was pregnant." She and the "other man." however, never engaged in intercourse, according to her testimony. She said the defendant had never made any written acknowledgment that he was the father of her child, "but he told me that he was unable to write." Neither he nor his family had ever made any gifts to her or the child, or offered to support the child. Defendant offered into evidence the child's birth certificate, on which the father's name did not appear. Plaintiff testified that she provided the information for the certificate at the hospital, but was not asked for, and did not offer to supply, the name of the father.

At the close of plaintiff's case, defendant moved for a directed verdict on the grounds that plaintiff had failed to make a *prima facie* case. Plaintiff's counsel argued that penetration is not necessary for pregnancy. "It's possible that the sperm can drip into the vaginal opening and then enter and fertilize the egg although, I will agree, it is improbable. The chances of becoming pregnant are substantially less." He contended that "the only man that could be the father is Louis Kite because her testimony is clear that she has had relations with no one else." Defense counsel

responded: "As I understand their burden, it is [to prove that] more likely than not that he is the father. If they are basing the whole thing on the matter that they admit is highly improbable, that is not showing by a preponderance of the evidence * * *." The court indicated its concern with submitting the case to the jury "where there is no intercourse, no penetration, * * * no evidence that sperm entered the vagina * * *." As the court viewed the evidence in the light most favorable to plaintiff, it showed only "that there was some sperm on the surface of her body." Plaintiff's counsel responded that she had testified that the sperm was in the vaginal area. The court then directed the jury to render a verdict for defendant, stating that "without any evidence other than the fact that a baby was born at a time following the described incident, there is no evidence here by way of expert or other witnesses that a pregnancy can result * * * or that in this case there was actual penetration of the vagina by sperm."

On appeal, plaintiff contends that the court erred in granting the motion for a directed verdict. The issue for our determination is whether the court erred in finding that all of the evidence, when viewed in its aspect most favorable to the plaintiff, so overwhelmingly favored the defendant that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria and Eastern R.R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504 (1967); *Petrous v. Roberts*, 12 Ill. App. 3d 992, 299 N.E.2d 322 (2d Dist. 1973.)

■■ To take a phrase from the *Pedrick* case itself, the most that can be said for plaintiff's evidence that defendant fathered her child is that it is "highly equivocal." (37 Ill. 2d 494, 511, 229 N.E.2d 504, 514.) Although at first she testified that sperm went *in* her vagina,[2] she later responded in the affirmative to her attorney's question whether the sperm landed upon her "vaginal area." Both plaintiff's counsel and the court apparently proceeded on the assumption that her testimony was that defendant had ejaculated *on* her, not in her vagina. Her testimony was clear that defendant's penis never entered her vagina. Viewed most favorably to the plaintiff, what the evidence amounted to was her own, necessarily uncorroborated, testimony that she did not have sexual intercourse with *anyone* during the crucial period of time, and that defendant ejaculated in the vicinity of her vagina. We have no hesitation in concluding that the trial court was correct in deciding that, on the basis of this evidence only,

---

[2] We are not satisfied that the transcript accurately reflects the testimony in the following exchange between plaintiff and her attorney:

"Q. And he ejaculated on you?
A. Yes.
Q. And where the sperm go?
A. In my vagina.
Q. What general area?"

no verdict finding defendant to be the father of her child could ever stand.

■■ The ordinary rules of pleading and proof are applicable in a paternity case. (*People ex rel. Jones v. Schmitt,* 101 Ill. App. 2d 183, 242 N.E.2d 275 (3d Dist. 1968).) As in any other case, a jury cannot be allowed to predicate its verdict on mere conjecture or surmise. (*Gillespie v. R.D. Werner Co., Inc.,* 43 Ill. App. 3d 947, 357 N.E.2d 1203 (5th Dist. 1976); *Champion v. Knasiak,* 25 Ill. App. 3d 192, 323 N.E.2d 62 (1st Dist. 1974).) Neither speculation nor suspicion is an acceptable substitute for proof. (*Hawkins v. Richardson,* 29 Ill. App. 3d 597, 331 N.E.2d 201 (1st Dist. 1975); *Halowatsky v. Central Greyhound Lines, Inc.,* 311 Ill. App. 127, 35 N.E.2d 541 (1st Dist. 1941).) Nor is defendant required to introduce evidence or have a theory of the occurrence. (*Krump v. Highlander Ice Cream Co.,* 30 Ill. App. 2d 103, 173 N.E.2d 822 (1st Dist. 1961).) The burden in a paternity action is on the mother to establish that the defendant, more probably than not, is the father of her child. In the ordinary case, her own testimony, if believed, can sufficiently meet that burden. *People ex rel. Raines v. Price,* 37 Ill. App. 3d 921, 347 N.E.2d 29 (4th Dist. 1976).

But this is not the ordinary case, where the mother testifies that conception occurred after an act of copulation with the defendant. We agree with defendant, and with the court below, that to make a *prima facie* case on facts such as these would necessitate proof that it is possible for conception to occur in such a manner. Such proof might take the form of the testimony of an expert witness, on the analogy of the professional liability cases (see, *e.g., Olson v. North,* 276 Ill. App. 457 (2d Dist. 1934). See also Wigmore Evidence § 2090, at 453-62 (3d ed. 1940) and at 177-79 (1975 Supp.)). Conceivably, it might be supplied by the court's taking judicial notice of the scientific fact that a woman can become pregnant after sperm falls upon her vaginal area, were that a fact irrefutably established in the scientific community. See *Nicketta v. National Tea Co.,* 338 Ill. App. 159, 87 N.E.2d 30 (1st Dist. 1949); McCormick, Evidence §330 (2d ed. 1972).

In other contexts, Illinois courts have said that where a condition is shrouded in controversy as to origin, lay testimony may be insufficient to establish a *prima facie* showing of causal relationship. (*Hyatt v. Cox,* 57 Ill. App. 2d 293, 206 N.E.2d 260 (4th Dist. 1965); *cf. Jackson v. Navik,* 37 Ill. App. 3d 88, 346 N.E.2d 116 (2d Dist. 1976).) Conversely, expert

---

Another apparently garbled portion of the testimony is the recorded response of Alean Atkins, a former co-worker of the parties, when asked whether defendant ever acknowledged the child in her presence.

"A. Well, sometimes like he's plural type you don't know sometimes whether he is telling the truth or not and then he could make something big out of nothing and then he'd come back and he'd switch it all the way around. I really can't say but he put things in so many words."

accident reconstruction testimony is not necessary where "the physical evidence leaves a trail easily read by the average juror." *Dobkowski v. Lowe's, Inc.,* 20 Ill. App. 3d 275, 277, 314 N.E.2d 623, 626 (5th Dist. 1974); *Abramson v. Levinson,* 112 Ill. App. 2d 42, 250 N.E.2d 796 (1st Dist. 1969).

■■■ We agree with defendant that to permit the jury to speculate as to the possibility of pregnancy on the facts shown here would be to invite a verdict which might well have no connection with reality. Jurors are routinely instructed that they may consider all the evidence in light of their own observation and experience in the affairs of life. (IPI Civil No. 1.04 (2d ed. 1971).) They are presumed to be competent in everything pertaining to the ordinary and common knowledge of mankind. (*Hays v. Place,* 350 Ill. App. 504, 133 N.E.2d 178 (4th Dist. 1953).) Wigmore refers to this doctrine as "judicial notice by the jury's own knowledge," but cautions that the scope of its operation is narrow: "it is strictly limited to a few matters of elemental experience in human nature, commercial affairs, and everyday life." (9 Wigmore, Evidence § 2570, at 542-44 (3d ed. 1940).) Although the ordinary circumstances of human conception are no doubt within the experience of the average juror—and thus of the court, which is not presumed to be more ignorant than other people (*Theo. B. Robertson Products Co. v. Nudelman,* 389 Ill. 281, 59 N.E.2d 655 (1945))—we think that the possibility of conception under the facts of the case is a matter outside of common experience that requires proof. Nor would it be appropriate for this court to take judicial notice of critical evidentiary material not presented in the court below, even had such material been presented to us, which it has not. *Ashland Savings & Loan Association v. Aetna Insurance Co.,* 18 Ill. App. 3d 70, 309 N.E.2d 293 (1st Dist. 1974).

For the foregoing reasons, the judgment of the Circuit Court of St. Clair County is affirmed.

Affirmed.

CARTER, P. J., and G. MORAN, J., concur.