THE PEOPLE *ex rel.* SHARON CIZEK, Plaintiff-Appellee, *v.* MICHAEL AZZARELLO, Defendant-Appellant.

First District (2nd Division)   No. 78-2070

Opinion filed February 26, 1980.

Michael E. Connelly, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and James Perlman, Assistant State's Attorneys, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, defendant Michael Azzarello was found to be the father of a male child

born out of wedlock to plaintiff Sharon Cizek and was ordered to pay child support as well as the cost of child delivery. Defendant's motion for a new trial was denied.

Defendant appeals contending that (1) he was deprived of a fair trial by the trial court's failure to determine whether he knowingly and understandingly waived his right to a trial by jury; (2) he was denied due process by the trial court's failure to order blood tests; (3) he was denied due process by the absence of a court reporter during the trial; (4) his motion for a new trial was improperly denied because new and vital evidence had recently been discovered; (5) the evidence was insufficient to support the finding of paternity against him; and (6) he was deprived of effective assistance of counsel.

Because no verbatim transcript of the trial was taken, defendant filed a certified bystander's report pursuant to Supreme Court Rule 323(c) (Ill. Rev. Stat. 1977, ch. 110A, par. 323(c)) which indicated the following evidence.

Plaintiff first met the defendant in February of 1976 and engaged in sexual intercourse with him in March, May and either the end of July or in early August of 1976; that neither she nor defendant used contraceptives during these times; and that her last menstrual period occurred the last week of July 1976. She testified that in November of 1976 her physician told her she was three months pregnant. When plaintiff informed defendant that she was pregnant, he told her to let him know if he could do anything and offered to pay for and made transportation arrangements for an abortion. She testified that she did not have sexual relations with any man other than the defendant from the time she began going out with him until well after her baby was born on May 27, 1977. She also testified that two of defendant's friends, Bob Hansen and Ken Wittie, told her defendant had admitted to them that he was the father of her baby and that it was Ken Wittie who offered to drive her to Michigan for an abortion.

Defendant testified that he met plaintiff in February of 1976 and that he had intercourse with her on three occasions, the last time being at least one week prior to July 10, 1976, the date on which he attended a friend's wedding. He stated that plaintiff called him many times asking for money to pay for an abortion and then later to pay for the hospital expenses. He denied ever offering plaintiff money or making plans for her to have an abortion.

Defendant's witness, Ken Wittie, testified that he introduced plaintiff to defendant and that the last time he saw them together was at least one week prior to July 10, 1976, the date he attended a friend's wedding with the defendant.

The trial court found defendant to be the father of plaintiff's baby and after denying defendant's motion for new trial, ordered defendant to pay plaintiff $25 a week for child support and $10 a week for child delivery costs until the sum of $425 was paid.

## I.

Defendant first contends that he had a constitutional right to a trial by jury, and that he was denied this right by the trial court's failure to determine whether he knowingly and understandingly waived this right.

Defendant cites section 103—6 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 103—6) as a codification of his constitutional right to a jury trial. That section provides, "Every person accused of an offense shall have the right to a trial by jury unless understandingly waived by defendant in open court." This provision governs only criminal proceedings. Ill. Rev. Stat. 1977, ch. 38, par. 100—2; *Alsen v. Stoner* (1969), 114 Ill. App. 2d 216, 223, 252 N.E.2d 488.

The proceeding involved in the present case was brought pursuant to the Paternity Act. (Ill. Rev. Stat. 1977, ch. 40, pars. 1351 through 1368.)[1] A paternity proceeding, although criminal in form, is a civil proceeding to determine the identity of the putative father, provide support for the illegitimate child, and prevent the child from becoming a public charge. (*People ex rel. Mathis v. Brown* (1976), 44 Ill. App. 3d 783, 786, 358 N.E.2d 1160, and cases cited therein.) Its purpose is not to impose a penalty as in criminal actions, but to convert a father's moral obligation to support his illegitimate children into a legal obligation. (*Cessna v. Montgomery* (1976), 63 Ill. 2d 71, 89-90, 344 N.E.2d 447.) A paternity proceeding is governed by the Civil Practice Act unless a specific provision of the Paternity Act requires otherwise. *People ex rel. Mathis v. Brown.*

Although not mentioned by either party, section 13 of article I of the Illinois Constitution (Ill. Const. 1970, art. I, §13) provides: "The right of trial by jury as heretofore enjoyed shall remain inviolate." This provision has been construed by our supreme court to mean the right of trial by jury as it existed at common law and as enjoyed at the adoption of the constitution. It does not mean a jury trial shall be had in every case, or preclude all restrictions on the exercise of that right. (*Hudson v. Leverenz* (1956), 10 Ill. 2d 87, 91, 139 N.E.2d 255.) As this court stated in *Clark v. Brown* (1970), 121 Ill. App. 2d 280, 284, 257 N.E.2d 565, in a paternity proceeding there can be no question as to one's constitutional right to trial by jury since this cause of action was not recognized at common law.

---

[1] The Paternity Act prior to 1977 was codified in Ill. Rev. Stat. under ch. 106¾, pars. 51 through 66.

■ Although there is no constitutional right to a jury trial in a paternity action, section 6 of the Paternity Act does create a statutory right to jury trial. That section in pertinent part provides:

"At the time appointed for appearance and answer, the court shall cause an issue to be made up whether the person charged is the father of the child, which issue, upon demand of either the mother or the accused person, shall be tried by a jury." (Ill. Rev. Stat. 1977, ch. 40, par. 1356.)

Section 64(1) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 64(1)), which applies to this proceeding unless the Act requires otherwise, provides that a defendant must file a jury demand not later than the filing of his answer or else he waives a jury. In the present case, there is nothing in the record to show that the defendant either in person or by his attorney at any time requested a jury trial. No request being made, defendant's right to trial by jury was waived. *LaLacker v. Stuckey* (1963), 40 Ill. App. 2d 341, 345, 189 N.E.2d 676; *People ex rel. Bucaro v. Johnson* (1972), 8 Ill. App. 3d 618, 621, 291 N.E.2d 9.

Yet defendant argues that under section 5 of the Paternity Act, the court must inform him of his right to trial by jury. That section in part provides: "Upon the first appearance of the accused, the Judge shall fully advise him of his rights to counsel and to a complete transcript of the proceedings in the cause. The judge shall further inform the defendant * * * that he has a right to a trial by jury in the cause, * * *." (Ill. Rev. Stat. 1977, ch. 40, par. 1355.) It is defendant's contention that because the record does not contain a jury waiver form signed by him and the report of proceedings of the trial did not contain any reference to a jury waiver, it must be concluded that the trial judge failed to advise him of his right to trial by jury as statutorily required and, unless affirmatively shown in the record, it cannot be presumed he voluntarily waived his right to a jury trial.

■ The two cases defendant cites in support of the proposition that waiver be affirmatively shown of record involve defendants' constitutional right to trial by jury in criminal proceedings. (*People v. Bell* (1968), 104 Ill. App. 2d 479, 244 N.E.2d 321; *People v. Turner* (1967), 80 Ill. App. 2d 146, 225 N.E.2d 65.) As already pointed out, defendant's right to trial here is not constitutionally derived but is based upon a statute which provides for a jury trial only upon demand, without which waiver of the right occurs. No affirmative showing of waiver is required.

■ The record on appeal does not contain a report of proceedings as to what occurred when defendant made his first appearance, the time when the trial court, by statute, was to advise defendant of his right to trial by jury. Where the record on appeal is incomplete, a reviewing court will

indulge in every reasonable presumption that the trial court acted correctly and will resolve any doubt arising from the incompleteness of the record against the appellant, whose responsibility it is to provide this court with a transcript of proceedings or a suitable substitute to show the error of which he now complains. (*People v. Fochs* (1976), 40 Ill. App. 3d 966, 967, 353 N.E.2d 326.) Thus we must assume the trial court complied with the statutory requirements. (See *Ehorn v. Podraza* (1977), 51 Ill. App. 3d 816, 819, 367 N.E.2d 300.) The defendant failed to establish from the record any error on this point.

## II.

■■ Defendant argues that because neither his attorney nor the court ordered blood tests which could have allowed him to establish his innocence at trial, he was denied due process of law. Defendant relies on section 1 of the Act on Blood Tests to Determine Paternity (Ill. Rev. Stat. 1977, ch. 40, par. 1401), which provides:

> "In a civil action, in which paternity is a relevant fact, the court, upon its own initiative, or upon motion of any party to the action, may order the mother, child and alleged father to submit to blood tests to determine whether or not the defendant shall be excluded as being the father of the child. The results of the tests shall be receivable in evidence only if definite exclusion is established. If the defendant refuses to submit to such test, such fact shall not be disclosed upon the trial."

The statute does not require the trial court to order blood tests, but rather by use of the word "may" the court has discretion in this matter. Defendant simply asserts that such tests *could* have been used to establish his innocence. Equally true is that such tests *could* have been unfavorable to the defendant. Defendant has failed to point out how the nonordering of blood tests, which he did not request by motion as required by the statute, constituted reversible error.

## III.

Defendant contends that the absence of a court reporter during the trial denied him due process rights and showed a noncompliance with section 5 of the Act which requires the trial court to inform the defendant of his right to a complete transcript of the proceedings in the cause. As previously pointed out, where the record is incomplete on appeal, we will assume that the trial court complied with statutory requirements.

Furthermore, contrary to defendant's position, it has been held that the right to a transcript is not a basic constitutional right (*People v. Grundset* (1978), 63 Ill. App. 3d 787, 789, 380 N.E.2d 1056), and the failure

to advise a defendant of his right to have a court reporter present is not prejudicial in light of his right to secure a bystander's report under Supreme Court Rule 323(c) (Ill. Rev. Stat. 1977, ch. 110A, par. 323(c); *People v. Palmeri* (1971), 1 Ill. App. 3d 1033, 1036, 275 N.E.2d 486).

The case upon which defendant relies, *People ex rel. Paul v. Harvey* (1972), 9 Ill. App. 3d 209, 292 N.E.2d 124, is factually distinguishable. There a court reporter was present during trial, but the trial judge would not allow the court reporter to record any legal argument counsel for appellant wished to make for the record outside the presence of the jury.

## IV.

Defendant contends that his motion for new trial should have been granted on the basis new and vital evidence had been discovered.

To warrant a new trial based on newly discovered evidence, it must be shown that such evidence could not have been produced at trial by the exercise of reasonable diligence, and it must be shown that such evidence is reasonably certain to result in a different verdict. (*People ex rel. Oemke v. Schuring* (1937), 288 Ill. App. 451, 455, 6 N.E.2d 217.) At the hearing on defendant's motion for new trial, defense counsel stated that he had recently become aware of the fact that a physician, on November 12, 1976, had diagnosed plaintiff as being three months pregnant. This information cannot be classified as newly discovered evidence as the record reveals that plaintiff testified to this fact at trial. It was before the trial court, as the trier of fact, and was considered in reaching its verdict. Therefore, defendant's point is without merit.

## V.

Defendant argues that the evidence adduced at trial was insufficient to support a finding of paternity against him.

■■ In a paternity action, the burden is on the mother to establish paternity by a preponderance of the evidence. (*People ex rel. Mathis v. Brown* (1976), 44 Ill. App. 3d 783, 786, 358 N.E.2d 1160.) This does not depend on the number of witnesses for each side, but on the weight to be afforded the witnesses' testimony, which is a matter of credibility for the trier of fact. (*People ex rel. Raines v. Price* (1976), 37 Ill. App. 3d 921, 923, 347 N.E.2d 29.) The determination of the trier of fact will not be reversed on appeal unless found to be against the manifest weight of the evidence. *People ex rel. Mathis v. Brown* (1976), 44 Ill. App. 3d 783, 789, 358 N.E.2d 1160.

Defendant argues that conception could not have occurred in July of 1976, since plaintiff testified that her last menstrual period occurred during the last week of July. However, as the trial judge pointed out to the

defendant at the hearing on his motion for new trial, it is not uncommon for women to menstruate after conception has occurred. Defendant also argues that since plaintiff learned on November 12, 1976, that she was three months pregnant, conception must have occurred around August 12, 1976, but the baby was not born until May 27, 1977, and there was no evidence that plaintiff had an abnormally long pregnancy. Defendant contends that the State should have presented expert testimony to resolve this factual dispute and cites *People ex rel. Adams v. Kite* (1977), 48 Ill. App. 3d 828, 363 N.E.2d 182, for the proposition that where a condition is shrouded in controversy as to origin, lay testimony may be insufficient to establish a *prima facie* showing of causal relationship.

■■ *Kite* is factually distinguishable from the present case in that plaintiff there testified that in her sexual encounter with the defendant, he did not penetrate her but did ejaculate near her and semen fell upon her vaginal area. This court found that the possibility of conception under those facts was a matter outside of common experience and required proof that conception could occur in such a manner. It is not a matter outside of common experience, nor is proof required to show that the normal gestation period is "approximately" nine months, not exactly nine months, and a mother giving birth to a baby a couple of weeks before or after the approximate due date cannot be said to have had an abnormally long pregnancy. We are not aware that the predicting of the date of birth has developed into an exact science.

## VI.

Finally, defendant argues that he was denied effective assistance of counsel because his attorney failed to request a court reporter, request a blood test, subpoena medical records, and secure the testimony of plaintiff's physician.

■■ Defendant by this argument, takes for granted that the right to effective assistance of counsel exists in a paternity action, a civil proceeding. Defendant cites no authority for such an assumption and instead relies exclusively on cases involving criminal proceedings in which a defendant's entitlement to assistance of counsel is derived from both the United States and Illinois constitutions. The standard in such cases to determine whether privately retained counsel was incompetent is whether the representation was of such a low caliber as to amount to no representation at all or reduced the court proceedings to a farce or sham. *People v. Murphy* (1978), 72 Ill. 2d 421, 436, 381 N.E.2d 677.

Assuming, arguendo, such a standard could be applied in the present case where defendant retained private counsel, defendant has failed to show how any one of the above-mentioned omissions resulted from the

actual incompetence of his attorney or resulted in substantial prejudice without which the outcome would probably have been different. *People v. Goerger* (1972), 52 Ill. 2d 403, 409, 288 N.E.2d 416.

Based upon the foregoing, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

PERLIN, P. J., and HARTMAN, J., concur.