THE PEOPLE *ex rel.* MONGOLIA BARBOUR, Plaintiff-Appellee, v. ROBERT HATCHETT, Defendant-Appellant.

Fourth District   No. 4—84—0635

Opinion filed March 12, 1985.

Robert T. Hall, of Ensel, Jones, Blanchard & LaBarre, of Springfield, for appellant.

J. William Roberts, State's Attorney, of Springfield (Robert J. Biderman, of State's Attorneys Appellate Service Commission, of counsel), for appellee.

JUSTICE WEBBER delivered the opinion of the court:

This is an action brought by the State of Illinois on behalf of the plaintiff, Mongolia Barbour, pursuant to the provisions of the Paternity Act (Ill. Rev. Stat. 1983, ch. 40, par. 1351 *et seq.*). Plaintiff alleges that the defendant is the father of her son, who was born out of wedlock. Following a bench trial, the circuit court of Sangamon County found that defendant was the father of the child. He now appeals, claiming that the court's decision was against the manifest weight of the evidence.

The testimony elicited at the May 17, 1984, bench trial varied widely as to the relationship between plaintiff and defendant. Plaintiff testified that she began to see the defendant on a regular basis in 1977 and that they continued their relationship until 1980. She stated that they had sexual intercourse four or five times per week during this entire period except when she was hospitalized in December 1978. They usually met at her apartment on weekends and some weekdays at approximately 8 p.m. She testified that defendant generally left her residence at 3 to 6 a.m. She further testified that she had a five-year-old daughter who was also fathered by defendant. She stated that defendant often took this child on weekends and that he had given her money for this child's support in the past. Plaintiff tes-

tified that her relationship with the defendant ended abruptly in 1980. She stated that she last had sexual intercourse with defendant in June 1980. She could not remember an exact date, but did remember that it was on the evening of an election day, as she was returning from the polls. She stated that she became pregnant in June 1980 and that her son was born on March 21, 1981, in good health. Her doctor had told her to expect the child on March 28, 1981. She stated that she had no sexual contact with anyone else in June 1980. Plaintiff testified that defendant has never acknowledged that he is the father of her son. She stated that she did not tell him that she was pregnant.

Under cross-examination, plaintiff stated that she did not know if the defendant was circumcised. She also stated that she was "absolutely sure" that the last time she had sexual intercourse with defendant was on a school board election day. She believed that this election had been held in June. She stated that she remembered the fact that it was an election day more clearly than she remembered the exact date. She testified that they stopped having sexual intercourse because defendant stopped coming to her residence on weekends in order to take her daughter to his residence. She did not know why he ended their relationship. After she became pregnant in June 1980, she had no further conversations with defendant until after her son was born. She stated that she never told him, during this time, that she was pregnant with his child despite the fact that he still came to her residence. She did not list the defendant as the father on her son's birth certificate. She stated that defendant has never visited his alleged son, nor has he given him any money or gifts. She testified that defendant called her on one occasion after her son's birth and denied that the child was his. He said it was not his child because he had had sexual intercourse with plaintiff only once. Plaintiff replied, "So."

Defendant, on the other hand, testified that he had never had sexual intercourse with the plaintiff. He also denied that he had ever given her money or gifts or that he had ever visited the plaintiff's daughter. He stated that he had never been in plaintiff's residence and that he was only casually acquainted with her. He testified that he had been happily married to his present wife since 1956.

Carol Barbour (plaintiff's sister) and Gloria Day testified that they had interrupted the plaintiff and the defendant on one occasion as they were copulating on Carol Barbour's couch. Carol Barbour recalled that this incident occurred prior to 1980.

Peggy Ingram testified that she was a precinct committeeperson in 1980 and that she accompanied the plaintiff home from the polls after a school board election. On that occasion, she observed and

spoke to the defendant at plaintiff's residence. She recalled that the election and this incident occurred on June 10, 1980.

Denise Curry, plaintiff's eight-year-old daughter from a previous relationship, testified that the defendant had been to her mother's home a "few" times and that he had taken plaintiff's other daughter out of the house. However, he had not been to their home for a "long time" and he had never taken plaintiff's son anywhere. She identified the defendant in the courtroom.

Margie Hatchett, the defendant's wife, stated that she and defendant had a very good marriage. She testified that defendant was always at their home at night unless he was out of town.

Linda McKinley testified that she was a frequent visitor at the defendant's home. She testified that defendant was present during her visits to the home approximately four times per week. She admitted that she was related by marriage to the defendant.

Defendant also introduced into evidence, without objection, the affidavit of Betty Legg, the secretary of the board of education of Springfield Public Schools District 186. Legg stated that only one school board election had been held in 1980. That election was conducted on April 12, 1980.

The trial court subsequently found that the preponderance of the evidence established that defendant was the father of plaintiff's son. Defendant's motion to reconsider was denied, and he was ordered to pay $75 per month for the benefit of the child. Timely notice of appeal was filed by defendant.

On appeal, defendant claims that plaintiff failed to sufficiently prove that he was the father of her child and that the trial court's decision was against the manifest weight of the evidence. We agree.

In a paternity action, the burden is on the mother, as plaintiff, to establish paternity by a preponderance of the evidence. (*People ex rel. Cizek v. Azzarello* (1980), 81 Ill. App. 3d 1102, 401 N.E.2d 1177.) Generally, the testimony of the plaintiff, if believed, is sufficient to support a finding of paternity. (*People ex rel. Raines v. Price* (1976), 37 Ill. App. 3d 921, 347 N.E.2d 29.) The determination of the trier of fact will not be reversed on appeal unless it is found to be against the manifest weight of the evidence. *Watkins v. Martin* (1983), 115 Ill. App. 3d 417, 450 N.E.2d 866.

Here, plaintiff's testimony and other evidence in her behalf, if believed, would establish that she last had sexual intercourse with the defendant on the date of a school board election in 1980. She was absolutely sure of this fact. She was less sure of the exact date of this election but she believed it was sometime in June 1980. However, the

uncontroverted affidavit of the secretary of the school board established conclusively that the only school board election held in 1980 occurred on April 12, 1980. This date was nearly one year prior to the birth of plaintiff's child. While a period of gestation of more than 11 months may be biologically possible, there is no evidence in the record, here, that would tend to show such an unusual pregnancy occurred here. It was the plaintiff's burden to produce such proof. *People ex rel. Adams v. Kite* (1977), 48 Ill. App. 3d 828, 363 N.E.2d 182.

Moreover, the plaintiff herself asserted that she became pregnant in June 1980, approximately nine months prior to the birth. Her doctor predicted a due date of March 28, 1981. The birth on March 21, 1981, of a six pound, six ounce baby, if anything, would appear to be slightly premature. Therefore, plaintiff failed to prove that her son was conceived on or before April 12, 1980. See *Matteson v. People ex rel. Kothe* (1905), 122 Ill. App. 66.

While plaintiff also testified that the last time that she had sexual intercourse with defendant was in June 1980, she was emphatic that she remembered that date because it was the election day when she returned to her residence with Peggy Ingram. She was absolutely sure that this "election day" was the last time that she had sexual intercourse with defendant. She was more certain that it was an election day than she was about the exact date. The affidavit of the secretary of the school board established that the election was actually held on April 12, 1980. Under these circumstances, the trial court would have been required to speculate that plaintiff was not truly certain that she had last had sexual intercourse with defendant on the date of a school board election in order to find that defendant was the father of her child. Contrary to her testimony, the trial court seems to have concluded that plaintiff actually was more sure that the last time she had sexual intercourse with defendant was in June 1980. Such a determination, based upon conjecture and speculation, should not form the basis for an adjudication of paternity. (See *People ex rel. Adams v. Kite* (1977), 48 Ill. App. 3d 828, 363 N.E.2d 182.) We believe that the trial court's decision is against the manifest weight of the evidence.

For all of the foregoing reasons, the judgment of the circuit court of Sangamon County is reversed.

Reversed.

GREEN, P.J., and TRAPP, J., concur.