**People of the State of Illinois, Plaintiff-Appellee, v. Joseph Rimicci, Defendant-Appellant.**

**Gen. No. 51,705.**

First District, First Division.

June 24, 1968.

Thomas M. Santora, of Chicago (Sidney Z. Karasik, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Maurice M. Dore, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

The defendant, Joseph Rimicci, appeals from a judgment order of the County Department, Family Court Division of the Circuit Court. The order appealed from

recited, inter alia, that the court (a magistrate sitting without a jury), after holding a trial and considering the evidence offered, had found the defendant "guilty" of being the father of the child, Joseph Elkin, born out of wedlock on April 4, 1965, and that the defendant was to pay the sum of Ten Dollars ($10) a week to provide for the support and maintenance of the child. These paternity proceedings were commenced by a verified complaint filed on September 9, 1965, by Andrea Elkin, alleging that the defendant was the father of the aforementioned child.

The defendant contends on appeal: (1) that the judgment is contrary to the manifest weight of the evidence; (2) that it was reversible error for the Magistrate to allow his being called as an adverse witness under Section 60 of the Civil Practice Act; and (3) that the Magistrate erred in not declaring a mistrial and disqualifying herself from further hearings when she prematurely announced the defendant guilty at the close of plaintiff's case, but prior to hearing testimony for the defense.

The relatrix, Andrea Elkin, who was nineteen at the time of the trial, testified that on April 4, 1965, she gave birth to a premature baby boy, Joseph John Elkin. She first met the defendant in 1962, and sexual relations were commenced between them in September of that year. They continued these relations occasionally during 1963 and 1964. The relatrix further testified that she and the defendant engaged in sexual intercourse in August, September, and October of 1964, and that she did not have intercourse with any other men during that period of time. Towards the end of September, 1964, a medical test revealed Miss Elkin to be pregnant. Two days later, she told the defendant about her pregnancy and he stated to her that they "ought to wait and then get married." She and the defendant engaged in further acts of

intercourse until approximately two weeks before the baby's birth, and again five months after the baby was born, in September of 1965. The relatrix further testified that she and the defendant talked frequently about getting married after she had told him about her pregnancy.

On cross-examination the relatrix testified that when she was thirteen years of age she was arrested and confined on the charge of "runaway." She first had sexual relations at the age of fourteen, and continued thereafter to engage in intercourse. Miss Elkin admitted that she had sexual relations with Frank La Marque in January of 1964, and that Mr. La Marque had visited her at her apartment during the time when the baby was conceived. She also testified to the fact that she had been intimate with a Mr. Russo after she had become pregnant, the act occurring in November of 1964.

The defendant was called as a witness by the State under section 60 of the Civil Practice Act to which procedure defendant's counsel objected on the grounds that the defendant was being compelled to testify against himself in a criminal action. The Magistrate overruled the objection to the defendant taking the stand, stating, "The Court takes the position this is entirely of a civil nature."

The defendant, under questioning by an Assistant State's Attorney, admitted engaging in sexual relations with the relatrix prior to the months of August, September, and October of 1964. However, he denied that he had intercourse with her either during those months or thereafter. He said he first became aware that Miss Elkin was pregnant in late October, 1964, when he visited the relatrix at her apartment and she told him that she was expecting. He visited Miss Elkin during her confinement at St. Elizabeth's hospital following the birth of her baby, and asked a nurse to point the baby out to him. He further testified that he next saw the relatrix

when the latter arrived at his place of residence carrying her baby, one evening in July of 1965. Miss Elkin stayed about four hours. During this time his mother supplied milk for the baby. His sister offered to give the baby a crib and to supply clothes for him. The defendant's mother went out and bought the baby some diapers. Two days later, the defendant drove Miss Elkin and her child to Michael Reese Hospital where he and the relatrix both conferred with a doctor as to the state of the baby's health. About six weeks after the visit to Michael Reese Hospital, the defendant, who was slightly intoxicated at the time, wrote a note which he left on Miss Elkin's car. The note was composed as if it had been written by the child to inform its mother of her maternal duties.

At the close of the State's case, the attorney for the defendant moved for a finding for the defendant. After hearing argument on the motion the Magistrate stated, "The Court will enter a finding of guilty." The Magistrate then denied defendant's motion and also denied a subsequent motion by defendant for a mistrial.

Thomas Keegan and Tony Tufano, testifying on behalf of the defendant, both stated that they had intercourse with the relatrix during the period of time when the baby was conceived. They testified that these acts occurred in the apartment of the relatrix. However, their testimony was rebutted by the relatrix who testified that the alleged acts of intercourse had not taken place. Neither Keegan nor Tufano were able to remember or identify certain physical characteristics of Miss Elkin's apartment when asked to do so on cross-examination.

The defendant contends that the finding of the Magistrate that he was guilty of being the father of the child born to the relatrix was clearly contrary to the manifest weight of the evidence in that the evidence did not preponderate in favor of the relatrix. He contends that, at best, the evidence for the prosecutrix was counter-

balanced by equally credible evidence offered in his own behalf and that the plaintiff, who was not a credible witness, did not carry her burden of showing that only he could have been the father of her child.

■ ■ With this contention in mind we have carefully examined the entire record. In order for a reviewing court to determine that a verdict is against the manifest weight of the evidence an opposite conclusion must be clearly evident; and it is our duty to affirm the findings of the trial court unless said findings are clearly and palpably erroneous. People ex rel. Dalman v. O'Malley, 43 Ill App2d 95, 192 NE2d 589. We have concluded that the Magistrate, the trier of fact, was fully warranted in finding the defendant guilty.

It was uncontradicted that prior to the alleged act of intercourse in which the infant was conceived a long period of intimate relations existed between the parties. According to the relatrix, these relations continued during her pregnancy and were resumed approximately five months after she gave birth. She testified that she and the defendant engaged in acts of sexual intercourse during the months of August, September, and October of 1964, and that she did not have intercourse with any other men during that period of time. Miss Elkin further testified that two days after she learned of her pregnancy she told the defendant about it and he informed her that they "ought to wait and then get married." The relatrix stated that after he found out she was pregnant the defendant often talked to her about getting married. The defendant admitted visiting the relatrix during her confinement at St. Elizabeth's Hospital. His family provided the complaining witness with a crib, clothes, and some diapers. The defendant drove the relatrix to Michael Reese Hospital, and conferred with the baby's doctor as to his health. Furthermore, the defendant admitted leaving a note for the relatrix purporting to be

from the baby, expressing concern as to his mother's capacity to take care of him.

The foregoing evidence clearly demonstrates a number of acts of sexual intercourse between the parties and a continuing pattern of concern for the baby's well-being expressed both by the defendant and his family. The evidence was conflicting as to whether the relatrix and the defendant engaged in sexual relations during the period of time when the baby was conceived. There were also conflicts in the evidence as to whether the relatrix had intercourse with other men during the period of conception. However, we will not interfere with the Magistrate's resolution of these factual disputes in favor of the plaintiff for her findings in this regard were not clearly and palpably against the manifest weight of the evidence. LaLacker v. Stuckey, 40 Ill App2d 341, 189 NE 2d 676. The defendant argues that the relatrix was not a credible witness because of her admitted intimacies with other men. We cannot say as a matter of law that this fact made the complaining witness's testimony unworthy of belief. In a paternity case questions of credibility and weight are for the trier of fact. People ex rel. Miceli v. Rembos, 26 Ill App2d 429, 168 NE2d 562.

The plaintiff, in the case at bar, was required to prove her case by a preponderance of the evidence. People ex rel. Cook v. Campbell, 201 Ill App 215. The relatrix has the burden of establishing the fact that the defendant is the father of her child. People ex rel. Bondy v. Morey, 315 Ill App 491, 43 NE2d 197. The defendant contends that the relatrix has not met this burden, and that the evidence does not preponderate in her favor. We cannot agree. The testimony of Miss Elkin, if believed, was sufficient to establish the fact that the defendant was the father of her child. Blackwell v. Welti, 46 Ill App2d 453, 197 NE2d 126.

The defendant next contends that it was reversible error for the trial court to allow the State to call him to the stand as an adverse witness under section 60 of the Civil Practice Act. He argues that portions of the testimony elicited from him exposed him to possible prosecution for either fornication or adultery and thereby violated his constitutional right not to be compelled to incriminate himself. He further contends that although the courts have characterized paternity proceedings as being "civil" in nature, they have not hesitated to protect constitutional rights in other kinds of civil proceedings where these rights have been threatened.

At trial, counsel for defendant objected to his client being called as an adverse witness because, "He will have to give testimony against himself, which is prohibited in a criminal action." At no time, however, during the questioning by the State's Attorney did the defendant refuse to answer a question propounded to him on the ground that answering it might tend to incriminate him.

 A paternity proceeding in its nature has the appearance of a criminal prosecution, but in fact it is a civil proceeding, the main object of which is to compel the putative father to contribute to the support of his illegitimate child to prevent the child from becoming a public charge. People ex rel. Dalman v. O'Malley, 43 Ill App2d 95, 192 NE2d 589. It being a civil action it follows that it is governed by the Civil Practice Act. See Poindexter v. Willis, 87 Ill App2d 213, 231 NE2d 1. While we agree with the defendant that under certain circumstances a defendant may rely on the privilege against self-incrimination in a proceeding which is ostensibly civil in nature (City of Chicago v. Berg, 48 Ill App2d 251, 199 NE2d 49), we do not believe that the facts of the instant case present such a situation. The Fifth Amendment does not disallow the asking of potentially incriminating questions nor does it allow the

person of whom the questions are asked to refuse to answer them without expressly asserting that his answer may tend to incriminate him. Communist Party of the United States v. Subversive Activities Control Board, 367 US 1. The privilege against self-incrimination is a personal one and if the witness answers without claiming it, the privilege is deemed to be waived. People v. Nachowicz, 340 Ill 480, 172 NE 812. In a civil case, the privilege against self-incrimination can only be raised after the witness has been sworn and can only be asserted in response to a potentially incriminatory question; in other words, the Fifth Amendment's protection does not attach until the witness has taken the stand and has refused to answer a question propounded to him. Pennsylvania Tank Line v. Jordan, 341 Ill 94, 173 NE 181; 8 Wigmore, Evidence, § 2268 (McNaughton, Rev, 1961). See also, In re Groban, 99 Ohio App 512, 135 NE2d 477, affd, 164 Ohio St 26, 128 NE2d 106, affd 352 US 330; O'Connell v. United States, 40 F2d 201 (CA 2nd Cir). On the basis of the foregoing authority we have concluded that calling the defendant to the stand as an adverse witness under section 60 did not violate his privilege against self-incrimination; and, furthermore, that his failure to claim the privilege during his questioning by the State's Attorney waived his right to assert it on appeal in regard to the questions asked of him at trial.

 Finally, the defendant contends that a mistrial should have been declared because the Magistrate betrayed her prejudice when she made a premature finding of guilty after hearing a motion made by him to dismiss at the close of the State's evidence. The Magistrate stated that she would enter a finding of guilty before the defendant had been given an opportunity to introduce any evidence. However, we must consider the fact that the trial took place without a jury, and the record is clear that the error was quickly corrected. The defendant

■

was offered a full opportunity to present his case. It may be that because the defendant had already testified the Magistrate became confused and incorrectly assumed that the defendant was not going to offer any other evidence. In any event, the Magistrate considered all of the evidence offered and we have concluded that the defendant was not prejudiced by this premature finding. The case of Vander Veen v. Yellow Cab Co., 89 Ill App2d 91, 233 NE2d 68, is clearly distinguishable on the facts, and merits no discussion by us.

The judgment is, therefore, affirmed.

Affirmed.

ADESKO and MURPHY, JJ., concur.