THE PEOPLE *ex rel.* JANICE REYNOLDS, Plaintiff-Appellee, *v.* J. T. MYERS, Defendant-Appellant.

First District (4th Division)   No. 77-448

Opinion filed February 28, 1978.

Thomas P. Cernek, of Chicago, for appellant.

William J. Scott, Attorney General, of Chicago (Paul J. Bargiel, Assistant Attorney General, of counsel), for appellee.

Mr. JUSTICE LINN delivered the opinion of the court:

Defendant, J. T. Myers, appeals from a judgment entered after a bench trial which found him to be the father of a child born to plaintiff, Janice Reynolds. On appeal, defendant contends: (1) that the trial court improperly placed the burden of proof on defendant; (2) that the court erred in basing its finding upon an incorrect recollection of the evidence.

We affirm.

At trial, defendant admitted that he first had sexual intercourse with plaintiff in her home in June 1973, and that this liaison continued until September 1974. In July 1974, plaintiff informed him that she might be pregnant. Her suspicion was confirmed the following month when she was examined by a physician. Defendant was told that he was the father of the child and, on March 3, 1975, when the child was born, defendant signed his name at the hospital as the child's father. He thereafter supported the child by purchasing food, clothing and other items, and making direct payments for medical expenses.

Defendant first began doubting that he was the father when an acquaintance, Eugene O'Neal, told defendant that he, as well, had sexual relations with plaintiff. Three other men also told defendant that they had sexual intercourse with plaintiff, and ridiculed him for getting "stuck."

Plaintiff testified that from April 1974 to August 1974 she engaged in sexual intercourse with defendant approximately three times a week. In June 1974 plaintiff had an abortion, and afterwards used an intrauterine device as a means of birth control. This device was removed after a short time. Defendant lived with plaintiff in May and June of 1974, during which time defendant was involved in divorce proceedings with his wife. From May 1974 to August 1974 plaintiff did not engage in sexual

intercourse with anyone except defendant. On March 3, 1975, plaintiff gave birth to a male child, two weeks premature of a full nine-month term.

For defendant, Dennis Pallazzola testified that he met plaintiff in the spring of 1974 when Eugene O'Neal introduced him to her. Pallazzola went to plaintiff's apartment with O'Neal, paid plaintiff 10 dollars, and had sexual intercourse with her. Pallazzola had intercourse with plaintiff on subsequent occasions, once or twice a week during June and July, and was joined by Robert P. Kennedy. Pallazzola further asserted that he always paid plaintiff for her sexual favors. At one time in August 1974, Pallazzola, Kennedy, O'Neal, three other men and two other women, went to plaintiff's apartment. Two of the men left after a short while. The ones who remained all partook in sexual intercourse. Pallazzola contended he continued to have sexual relations with plaintiff for some time thereafter.

Robert P. Kennedy testified that he also began having sexual intercourse with plaintiff after meeting her in the spring of 1974. Although he stated that he took part in sexual relations with plaintiff along with Pallazzola and two other men, Kennedy said that this occurred about July 4, and that the other two women and two of the men left before the remaining four men had sexual intercourse with plaintiff. Afterwards, each man gave plaintiff 10 dollars. Kennedy stated he continued to have intercourse with plaintiff in August 1974.

Eugene O'Neal testified that he first met plaintiff in March, 1974. He had sexual intercourse with her in her apartment the evening they met, for which he paid 10 dollars. O'Neal continued to have sex with plaintiff twice a week until August 1974. O'Neal also recounted that in July, he and three others had sexual relations with plaintiff after two couples had left plaintiff's apartment.

Defendant testified that he assumed that he was the father of plaintiff's child until May 1975, when he was told that others had had sexual relations with plaintiff.

In rebuttal, Barbara Reynolds, plaintiff's sister-in-law, testified that she was a very frequent visitor to plaintiff's home. She asserted she stayed in plaintiff's home as often as six days a week during June, July and August of 1974. Defendant was living with plaintiff during some of those months. The witness further stated that she had never seen another man in the plaintiff's apartment.

Edward Reynolds, plaintiff's father, testified that he owned the two-apartment building where plaintiff resided, and he lived in the first floor apartment. He said he did not see any men enter or leave plaintiff's apartment other than defendant.

At the close of the evidence, the trial court found that defendant was the father of the child born to plaintiff and ordered that defendant make

payments for the child's support. The trial judge specifically stated that "after listening to the testimony, that I do not believe that defendant's witnesses; accordingly, there will be a finding of paternity."

OPINION

Defendant contends that the trial court improperly placed upon him the burden of proving that he was not the father of the child. This contention is based upon the trial court's remarks during the course of its findings:

> "* * * The only issue I have in this case is whether and if there is credible evidence for me to believe that other people had access to her in a sexual manner so that they could be the father. If I would believe this, I would then find for the defendant because if there is a possibility that somebody else is the father, then I don't believe that anybody should be stigmatized with the title and also the responsibility of paternity.
>
> So, the whole issue revolves around the credibility of the witnesses for the defendant. * * *"

However, these remarks were made after the trial court noted that the State's proof established that defendant had access to the plaintiff and that he had acknowledged his paternity in several ways, including his acknowledgement of paternity at the hospital shortly after the birth of the child.

■ In a paternity case, the burden of persuasion rests on the plaintiff to prove the charge by a preponderance of the evidence. Where the case is tried without a jury it is for the trial judge to determine the credibility of the witnesses and the weight to be given their testimony. If the defendant's evidence contradicts that of the plaintiff, the judge may choose to believe one party and not the other. An appellate court will reverse a trial court on a question of fact only if it is clear that the decision reached is contrary to the manifest weight of the evidence. *People ex rel. Staples v. Prude* (1974), 18 Ill. App. 3d 269, 309 N.E.2d 670.

■■■ In the case at bar, there was no question involved concerning whether defendant could have been the father of the child. Consequently, as the trial court aptly noted, the resolution of this case turned upon whether defendant's witnesses were credible so as to negate plaintiff's testimony that she did not engage in sexual intercourse with anyone but defendant. Testimony that other men had engaged in intercourse with plaintiff during the period of conception is not determinative, since the plaintiff's testimony, if believed, is sufficient to support a finding of paternity. Of course, this is a question of credibility for the trier of fact. (*People ex rel. Raines v. Price* (1976), 37 Ill. App. 3d 921, 347 N.E.2d 29.) Defendant's witnesses testified inconsistently as to the time that they all participated together in intercourse with plaintiff. There was also

conflicting testimony concerning how many women were at plaintiff's home at the time of this occurrence. Furthermore, plaintiff's rebuttal witnesses offered additional evidence that defendant's witnesses were not worthy of belief. Under these circumstances, we do not believe that the trial court's findings were erroneous.

Defendant also contends that the trial court erred when it incorrectly recalled the evidence. The court recalled the evidence now in issue as an incident "* * * where six people were involved, two other women and four men. I beg your pardon, three men, two other women and the prosecutrix, or the plaintiff. * * *"

*People v. Bowie* (1976), 36 Ill. App. 3d 177, 343 N.E.2d 713, is cited by defendant in urging reversal based upon the erroneous recall of the exact number of parties to the incident. In *Bowie*, it was held that error occurred warranting reversal when the trial court did not recall the crux of the defense.

In the present case, the trial court did not fail to recall the evidence. Rather, the court was merely confused as to the number of participants involved in the incident. The court correctly recounted the other pertinent details of each witness' testimony, and recounted the inconsistencies between their accounts. Also, while two of the witnesses stated that four men and plaintiff were involved, Pallazzola indicated that two women were also present. Under these circumstances, and in light of defense counsel's failure to correct the court's possible misapprehension of the number of persons involved, any error that may have been committed cannot warrant a reversal.

Considering the totality of the evidence presented and for the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

DIERINGER and ROMITI, JJ., concur.