ISABEL PACHECO SANTIAGO, Plaintiff-Appellee, v. ALBERTO SILVA, M.D., Defendant-Appellant.

First District (4th Division)    No. 79-158

Opinion filed November 13, 1980.

---

Blumenthal & Stavins, of Chicago (Milton M. Blumenthal and Richard Lee Stavins, of counsel), for appellant.

Alvin E. Rosenbloom, of Chicago (Barry Rosenbloom, of counsel), for appellee.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Isabel Pacheco Santiago, brought this action against defendant, Dr. Alberto Silva, seeking to establish the paternity of her son. The case was heard by a jury which returned a verdict finding defendant the father of plaintiff's child. Judgment was entered on the verdict, and defendant was ordered to pay child support, certain expenses connected with childbirth, and plaintiff's attorney's fees.

Defendant appeals from the order of the trial court. He argues the trial court should have entered a judgment in his favor notwithstanding

the verdict, and that errors were committed by the trial court which mandate a new trial.

We affirm the judgment of the trial court.

Plaintiff first met defendant in 1973 while her mother was one of his patients. He is a medical doctor, certified in obstetrics and gynecology and licensed by the State of Illinois. He first saw plaintiff professionally in March 1974.

Plaintiff was still married to Angelo Santiago and living with him in Chicago in 1973. They had no children. In September 1973, the Santiagos separated. They had sexual relations once thereafter in April 1974. Mr. Santiago moved to Champaign, Illinois, in the summer of 1974. A judgment for divorce was obtained by the couple in March 1975.

According to plaintiff, she first dated defendant in September 1974. She alleged to have had intercourse with him on several occasions from that date until February 1975. She stated she had visited defendant's home in Lincolnwood and on each of those occasions had sexual relations with him. She was able to describe the interior of defendant's home in detail.

Adriana Pala, plaintiff's sister, testified she lived in the same apartment building as plaintiff in February 1975. She, like her sister, was a patient of defendant. Pala knew defendant drove a yellow Cadillac and on one occasion she saw her sister get out of a yellow Cadillac in front of the apartment building.

Plaintiff testified she saw defendant at his office in January 1975 because she did not feel well. He confirmed she had a kidney infection, and, in testing her urine, determined that she was pregnant. Plaintiff stated defendant suggested she have an abortion but she strongly refused for religious reasons. His insistence on an abortion forced her to obtain the services of another gynecologist for her prenatal care. She came under the care of Dr. Linus.

In September 1975, plaintiff gave birth to twins in Mexico where her family lived. One of the twins died; the survivor she named Alberto. The Spanish language birth certificate of the child was presented but not admitted into evidence. An offer of proof provided that the birth certificate indicated "father unknown."

In October 1977, plaintiff, her former husband, Angelo, and her son went to the Mount Sinai Blood Bank Center and had their blood tested. Dr. Chang Ling Lee, director of the Center, testified that, based upon the blood tests, Angelo Santiago was excluded from paternity of the child.

Elvira Hohl, a co-worker of plaintiff, testified that a male identifying himself as Dr. Silva telephoned at work several times asking for plaintiff, and she was aware plaintiff was dating defendant. Another co-worker,

Fidel Ingeles, testified to seeing plaintiff enter a yellow Cadillac with a man who was small-framed. Ingeles could not identify the man as the defendant.

In his testimony, defendant acknowledged he was a general physician and gynecologist. He had examined and treated plaintiff and her mother several times, in a professional capacity, at his office and at the hospital. He denied ever seeing plaintiff socially and denied ever engaging in sexual relations with her.

Defendant testified that from December 17 to 27, 1974, he was in Mexico. When he returned to Chicago, he brought his mother and sister with him and they remained as his guests until mid-January 1975. His daughters were also house guests at that time.

Defendant's annual income in 1976 and 1977 was approximately $162,000. Plaintiff's annual income for those years ranged from $14,000 to $16,000.

After hearing the evidence, the jury returned a verdict finding defendant the father of plaintiff's child. The trial court awarded plaintiff $550 per month for child support and ordered that defendant pay $9,890 in attorney's fees to plaintiff's attorney.

■■ While we agree with defendant that a party admitting to adultery may not be entitled to divorce (*Decker v. Decker* (1901), 193 Ill. 285, 294, 61 N.E. 1108, 1111; *Bilsky v. Bilsky* (1974), 18 Ill. App. 3d 329, 334, 309 N.E.2d 697, 701; *Nesheim v. Nesheim* (1938), 293 Ill. App. 257, 260, 12 N.E.2d 222, 223), it does not necessarily follow that a party, such as plaintiff, who has alleged being "good, true, and virtuous" in a divorce proceeding is estopped from alleging the illegitimacy of her child and asserting that a certain man is the natural father of the child. The question of whether the plaintiff was "a good, true, and virtuous wife" is not the issue in this paternity action. Rather, the evidence contained in plaintiff's divorce proceeding speaks to the credibility of the plaintiff as a witness. In this, as in any paternity action, the key issue is the identity of the putative father. It should be resolved by the trier of fact based upon the testimony presented. A reviewing court must affirm the finding of the trier of fact unless it is shown to be clearly and palpably erroneous. *People v. Rimicci* (1968), 97 Ill. App. 2d 470, 476, 240 N.E.2d 195, 198.

■■ In the case at bar, the jury had the opportunity to hear the testimony of plaintiff and determine her credibility. After reviewing the testimony, we cannot conclude the trial court was clearly and palpably in error. There is no adequate legal basis for the trial court granting a judgment notwithstanding the verdict. See generally *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

Defendant complained of a series of errors made by the trial court.

We have considered all of them carefully and find some to be without merit. Although none of the remaining issues requires reversal, we will, nevertheless, briefly address them.

■■ Defendant asserts the Civil Practice Act mandates that on request of any party, special interrogatories must be presented to the jury, and that failure by the trial court to tender special interrogatories is reversible error. The basic premise is correctly stated (see *Prange v. Wallenburg* (1975), 27 Ill. App. 3d 618, 327 N.E.2d 450; *Moyers v. Chicago & Eastern Illinois R.R. Co.* (1963), 43 Ill. App. 2d 316, 193 N.E.2d 604); however, a special interrogatory must relate to a question of fact (see Ill. Rev. Stat. 1977, ch. 110, par. 65) rather than a question of law. Defendant asked the trial court to give the special interrogatory, "Was the child, Alberto Pacheco, born out of wedlock?" The phrase, "child born out of wedlock," is defined in section 1 of the Paternity Act (Ill. Rev. Stat. 1977, ch. 40, par. 1351). Therefore, to have used the phrase in a special interrogatory would, in effect, have been asking the jury to interpret the statute. Thus, we find the special interrogatory submitted by defendant related to an issue of law rather than a question of fact and was properly refused.

Plaintiff produced a Spanish language birth certificate and an English translation of the certificate during pretrial discovery. According to the certificate, the father of the child was "unknown." Although the document was identified in court by plaintiff, the trial judge refused defendant's offer to admit the certificate and an English translation into evidence.

■■ Defendant cites *People ex rel. Wisneski v. Thomas* (1974), 23 Ill. App. 3d 489, 319 N.E.2d 559, in support of his contention that the birth certificate should have been admitted. We would distinguish that case from the one before us because, here, plaintiff never adopted the certificate by giving written consent to show the father's name as was done in *Wisneski*. The certificate and translation were not prepared or signed by plaintiff or by someone with the authority to act on her behalf. The translation was also made by some unknown person. The trial court ruled properly by refusing to admit the certificate, no adequate foundation for its admissibility having been presented.

■■ Plaintiff's former husband, Angelo Santiago, was asked on cross-examination:

> "Were you ever told that you may be required to pay for support of this child your wife had conceived?"

Plaintiff's counsel objected, based on relevance. The objection was sustained by the court. Defendant would have us find the court's ruling amounted to reversible error, in that it unduly restricted defendant's right to cross-examine. However, where a trial judge improperly restricts cross-examination of a witness, the error is harmless unless it results in

prejudice (*Chloupek v. Jordan* (1977), 49 Ill. App. 3d 809, 364 N.E.2d 650). The trial court determined the question lacked relevance. Without reaching the propriety of that determination, we find no prejudice to defendant in the trial court's ruling. Even if Mr. Santiago's testimony had been properly impeached, the outcome of the case would have been the same.

Finally, we turn our attention to the issue of proof. A presumption exists that a child conceived during wedlock is legitimate. This presumption is rebuttable and can be overcome by irrefragable proof (*People ex rel. Jones v. Schmitt* (1968), 101 Ill. App. 2d 183, 186, 242 N.E.2d 275, 276). Moreover, in a paternity suit, the burden of persuasion rests with the plaintiff to prove the charge by preponderance of the evidence. *People ex rel. Reynolds v. Myers* (1978), 58 Ill. App. 3d 373, 376, 374 N.E.2d 717, 719; *People ex rel. Raines v. Price* (1976), 37 Ill. App. 3d 921, 923, 347 N.E.2d 29, 32.

■■ We find irrefragable proof was presented in this case through the testimony of Dr. Chang Ling Lee. Dr. Lee testified the blood tests performed on the mother, husband and child excluded the husband from paternity of the child. This was offered in addition to testimony by plaintiff that she did not have intercourse with her former husband during the period of conception. Her testimony was corroborated by that of her former husband who said he was living in a different city, away from plaintiff, during that time.

Defendant asserts the blood tests were administered without conforming to sections 1 through 7 of the Paternity Act (Ill. Rev. Stat. 1977, ch. 40, pars. 1401 through 1407) and should not have been admitted into evidence. Section 1 of the Act provides:

"§1. In a civil action, in which paternity is a relevant fact, the court, upon its own initiative, or upon motion of any party to the action, may order the mother, child and alleged father to submit to blood tests to determine whether or not the defendant shall be excluded as being the father of the child. The results of the tests shall be receivable in evidence only if definite exclusion is established. If the defendant refuses to submit to such tests, such fact shall not be disclosed upon the trial."

The Act states in section 5:

"§5. Presumption of legitimacy

The presumption of legitimacy of a child born during wedlock is overcome if the court finds that all the experts, as disclosed by the evidence based upon the tests, show that the husband is not the father of the child."

Although section 1 refers to the alleged father as the subject of the blood tests, section 5 acknowledges that the husband may be tested. If

the tests show that the husband is not the father, the presumption of legitimacy is overcome.

██ The testimony of Dr. Lee was presented as evidence refuting the presumption of legitimacy. Both plaintiff and Angelo Santiago testified to submitting to the blood tests, along with the child. Dr. Lee said that the blood was taken by specialists who were under his supervision and direction. We think there was ample foundation for the husband's blood test results to have been admitted. The evidence represented the irrefragable proof necessary to overcome the presumption of legitimacy. It led the jury to its final and proper decision.

For the aforesaid reasons, the judgment of the circuit court is affirmed.

Affirmed.

LINN, P. J., and ROMITI, J., concur.