SANDRA VIRZINT, Plaintiff-Appellee, v. ROBERT BERANEK, Defendant-Appellant.

First District (1st Division)   Nos. 82—43, 82—1760 cons.

Opinion filed October 24, 1983.

McGLOON, J., dissenting.

Patrick A. Tuite and David S. Mejia, both of Chicago, for appellant.

Gerald M. Sachs & Associates, of Chicago (Roger H. Williams, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Defendant appeals from a jury verdict finding him to be the father of the plaintiff's child. This issue was previously before this court in *Virzint v. Beranek* (1980), 85 Ill. App. 3d 919, 407 N.E.2d 701, but we held that there was no final and appealable order because the issue of support had not been determined in the trial court. On remand to the trial court, orders were entered against the defendant for support and maintenance along with attorney fees. Defendant now raises the following issues: (1) whether the finding of paternity was against the manifest weight of the evidence; and (2) whether the trial court erred first, in permitting testimony alleged to contradict facts adduced in the verified complaint, and second, in denying defendant's request to impeach the plaintiff on the alleged prior inconsistent statement.

The record discloses that plaintiff, age 17, first met the defendant, age 36, in 1974 when she sought his representation in her personal injury case. The plaintiff was referred to the defendant, an attorney, by Joseph Fass, a friend of the plaintiff's mother. According to the plaintiff, she dated the defendant frequently over an 11-month period and had intercourse with him on numerous occasions during that time. She testified that when she told the defendant about the pregnancy he began to give her money by placing weekly amounts in his mailbox for her to pick up. She received approximately $450 from the defendant during her pregnancy. Jimmy Efrimidis, plaintiff's friend, testified that he accompanied the plaintiff on one occasion to retrieve money from the mailbox.

Plaintiff's sister, Renee DeCarlo, and her husband, William DeCarlo, each testified that they went to the defendant's home in October 1976 to discuss the plaintiff's pregnancy with the defendant. They, along with the plaintiff's mother, said that the defendant admitted being the father of the plaintiff's child.

Joseph Fass testified that the defendant had asked for his permis-

sion to date the plaintiff and that the defendant later admitted to Fass that he was dating the plaintiff. Cathleen Damato, plaintiff's co-worker, testified that while working one evening in the coffee shop at Condesa del Mar, she saw the plaintiff and the defendant together and was introduced to him by the plaintiff at that time.

After having been called under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 60), the defendant stated unequivocally that his only contact with the plaintiff was in his representation of her personal injury case. The defendant denied ever having sexual relations with the plaintiff or ever giving her money. He also stated that the DeCarlos had come to his home, but that he never admitted being the father of the plaintiff's child to the DeCarlos or to the plaintiff's mother.

Defendant argues that the evidence adduced at trial was insufficient to support a finding of paternity against him. He cites two alleged inconsistencies in the plaintiff's testimony, as compared to her deposition. First, the defendant argues that at trial the plaintiff changed the date she gave at her deposition as to when she began having sexual intercourse with the defendant. Defendant also argues that the plaintiff changed the facts at trial by testifying that she was not always alone when retrieving money from the defendant's mailbox. Defendant also contends that the plaintiff's testimony was not corroborated since all the plaintiff's witnesses were family or friends of the plaintiff.

Generally, in a paternity action, the burden is on the mother to establish paternity by a preponderance of the evidence. (*People ex rel. Mathis v. Brown* (1976), 44 Ill. App. 3d 783, 358 N.E.2d 1160.) Both the plaintiff and the defendant are competent witnesses in a paternity action (*People ex rel. Wider v. Johnson* (1975), 26 Ill. App. 3d 192, 324 N.E.2d 723), and the testimony of the plaintiff, if believed, is sufficient to support a finding of paternity. (*People ex rel. Gerard v. Wilson* (1974), 22 Ill. App. 3d 331, 312 N.E.2d 170.) In such actions it is the trier of fact who is present to weigh the evidence and consider the credibility of the witnesses and the determination of the trier of fact will not be reversed on appeal unless found to be against the manifest weight of the evidence. *Watkins v. Martin* (1983), 115 Ill. App. 3d 417, 450 N.E.2d 866.

■ After reviewing the record, we conclude that there is ample support for the jury's verdict and the trial court's finding of paternity against the defendant. Plaintiff's testimony that she dated the defendant between September 1975 and August 1976 was corroborated at trial by witnesses Damato and Fass. Therefore, defendant's conten-

tion that the plaintiff changed her testimony regarding the dating period, to fit within the gestation period, is not supported by the evidence in the record. Furthermore, defendant's argument that the plaintiff changed her testimony at trial to "fit her purpose" by producing Efrimidis as a witness, is contradicted by the record. The record shows that the plaintiff filed an affidavit to correct her deposition and disclose Efrimidis as a witness shortly after her deposition was taken. Finally, defendant's contention that the plaintiff's testimony was not corroborated questions the credibility of the witnesses, a determination for the trier of fact. Here there was simply a conflict between the testimony of plaintiff and defendant, and the resolution of such conflicting testimony is determined by the trier of fact. *Watkins v. Martin; People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.

■ Defendant next contends that the trial court committed reversible error by admitting testimony into evidence which allegedly contradicted the plaintiff's verified complaint and by refusing to permit the defendant to impeach the plaintiff on that testimony. The defendant maintains that paragraph 7 of the plaintiff's verified complaint, which states in part: "That the Defendant *** agreed to support and maintain the Plaintiff during her pregnancy and thereafter, but has failed to do so," is contradictory to testimony that she received weekly sums of money from the defendant. Plaintiff argues that the statements are not inconsistent. The verified complaint does not state that the plaintiff received no money from the defendant, but that the defendant failed to "support and maintain the plaintiff during her pregnancy and thereafter." Plaintiff testified that she received approximately $450 from the defendant during her pregnancy but received no money after the child was born.

We do not agree that the allowance of plaintiff's testimony as to the periodic receipts of the sum totaling approximately $450, coupled with the allegation in the verified complaint that defendant failed to keep a promise to pay support, deprived defendant of his efforts to impeach plaintiff by way of a prior inconsistent statement. We do not agree that the allegation in the complaint and the testimony of the receipt of approximately $450 necessarily results in any inconsistency or contradiction in this action. Defendant seems to view the matter of support as a paramount issue in this case. The trial court may well have felt that the line of questions regarding the periodic payments was inappropriate under the circumstances in view of the fact that the primary and decisive issue to be determined was the issue of paternity, and not whether defendant had promised to support plaintiff

during her pregnancy and prior to a finding of paternity. The issue of paternity and the fixed amount of support money that defendant was to pay was the final determination by the trial court of the ultimate rights of the parties put in issue by the complaint. (See *Deckard v. Joiner* (1970), 44 Ill. 2d 412, 255 N.E.2d 900, *cert. denied* (1970), 400 U.S. 941, 27 L. Ed. 2d 244, 91 S. Ct. 232.) It follows that paternity cannot properly be made to depend on whether defendant did or did not promise to support, or whether plaintiff did not in fact receive support.

We therefore reject defendant's contention that the scope of cross-examination for impeachment purposes was limited and denied defendant a fair determination of the evidence. The scope of cross-examination lies within the sound discretion of the trial court, and this court will not disturb the exercise of that discretion unless there has been an abuse of discretion. (*People v. Bryant* (1983), 115 Ill. App. 3d 215, 450 N.E.2d 744; *People ex rel. Holland v. DeMichael* (1979), 79 Ill. App. 3d 974.) We do not find an abuse of discretion here nor that the trial court improperly limited cross-examination.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

BUCKLEY, P.J., concurs.

JUSTICE McGLOON, dissenting:

I respectfully dissent from my colleagues' opinion for two reasons. First, I believe that defendant should have been allowed to impeach plaintiff at trial with inconsistent statements made in her verified complaint. Second, the trial court should have ordered plaintiff, defendant, and the child to submit to blood tests, including the Human Leucocyte Antigen test pursuant to the Act on Blood Tests to Determine Paternity. Ill. Rev. Stat. 1981, ch. 40, pars. 1401 through 1407.

Very recently, this court held that admissions contained in original verified pleadings remain binding and conclusive on the pleader despite subsequent inconsistent amendments. (*American National Bank & Trust Co. v. Erickson* (1983), 115 Ill. App. 3d 1026, 452 N.E.2d 3.) Earlier Illinois cases establish that formal admissions in pleadings are judicial admissions conclusive on the pleader, which have the effect of withdrawing a fact from issue. (*Gagne v. Village of LaGrange* (1976), 36 Ill. App. 3d 864, 345 N.E.2d 108.) The binding nature of such ad-

missions is not altered by later inconsistent assertions. (*Gagne.*) Moreover, inconsistent statements contained in an original verified pleading may be used to impeach a party who takes the stand. *People ex rel. Mullin v. Williams* (1957), 13 Ill. App. 2d 164, 141 N.E.2d 645.

In the instant case, the complaint filed by plaintiff contained her unequivocal statement that she did not receive support from defendant during her pregnancy. It was sworn to and was signed twice by plaintiff. However, at trial, plaintiff testified that on a number of occasions during her pregnancy, defendant left money in a mailbox for her. The money, plaintiff testified, was intended to support her during pregnancy. This evidence, which directly contradicts the sworn statements contained in plaintiff's verified complaint, was allowed to be introduced at trial. Defendant's attempt to impeach plaintiff by use of her verified complaint was not allowed. Demonstrating the incredibility of a witness, including a party to an action, by the introduction of an inconsistent statement is a fundamental right firmly established in our case law. *Sommese v. Maling Brothers, Inc.* (1966), 36 Ill. 2d 263, 222 N.E.2d 468.

The facts in the present case are largely, if not entirely, within the plaintiff's knowledge. Here, as in *Petru v. Petru* (1954), 4 Ill. App. 2d 1, 123 N.E.2d 352, it must be assumed that plaintiff knew what she was doing when she swore to the truth of the statements contained in her complaint. I must conclude, as did the court in *Petru*, that plaintiff's abandonment of the charge contained in the body of her verified complaint impaired her credibility. Defendant should have been allowed to bring this fact to the attention of the jury. The trial court's ruling denied defendant such an opportunity and constituted reversible error. For these reasons, I would reverse and remand the cause for further proceedings.