THE PEOPLE *ex rel.* TRUDY PENNINGTON BROWN, Plaintiff-Appellee, v. PAUL BLOODWORTH, Defendant-Appellant.

Fifth District   No. 5—85—0025

Opinion filed May 28, 1987.

___

[1]Justice Karns replaces Justice Jones, who retired after the cause was taken under advisement.

902

Mateyka, Hill & Hill, P.C., of Edwardsville, for appellant.

Dick Allen, State's Attorney, of Edwardsville (Kenneth R. Boyle, Stephen E. Norris, and Debra A. Buchman, all of State's Attorneys Appellate Service Commission, of counsel), for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

Defendant, Paul Bloodworth, has perfected this appeal from a determination of paternity entered by the circuit court of Madison County pursuant to the State's motion for summary judgment. The facts are as follows.

On April 10, 1980, the State, on relation of Trudy Pennington Brown, filed a welfare enforcement case against defendant, alleging that defendant fathered a male child born to Ms. Brown. On or about August 8, 1980, pursuant to defendant's motion that the parties submit to a blood test to disprove defendant's paternity, a blood test was performed by the Red Cross laboratory in St. Louis, Missouri. This test, which encompassed six methods of blood typing, including the human leucocyte antigen (HLA) test, purportedly established that if defendant had sexual intercourse with Ms. Brown during the period of possible conception, it was 99.9% probable that defendant was the biological father of the child. In answers to interrogatories, Ms. Brown indicated that she was married to Joseph Pennington from May 12, 1977, through, at very least, May 16, 1980. The child alleged to be the son of defendant was born on December 4, 1979.

The Act on Blood Tests to Determine Paternity, as in effect at the time of defendant's blood test, provided that the results of such tests "shall be receivable in evidence only if definite exclusion [of the alleged father] is established." (Ill. Rev. Stat. 1979, ch. 40, par. 1401.) However, effective January 1, 1981, the results of such tests became admissible so long as such tests clearly and convincingly show that the man tested is the father of the child. (Ill. Rev. Stat. 1983, ch. 40, pars. 1401, 1404(b).) Furthermore, we note that these statutory provisions were repealed effective July 1, 1985 (Pub. Act 83—1372, sec. 28, effective July 1, 1985), and were replaced by section 11 of the Parentage Act of 1984 (Ill. Rev. Stat. 1985, ch. 40, par. 2511), which provided that if blood tests taken under the Act excluded the paternity of the alleged father, he is presumed not to be the father, and such presumption must be rebutted by clear and convincing evidence.

On July 2, 1981, the State moved for an order requiring the parties to submit to another blood test, with costs to be borne by defendant. After the court granted this motion, defendant objected on the ground that since the State requested the blood test, the State should bear the cost. The court thereafter modified its prior order, assessing costs of this blood test against the State. The State then filed a motion *in limine*, seeking to exclude all evidence resulting from any subsequent blood test and seeking to admit the blood tests taken in August 1980. Defendant moved to strike, asserting that since the law in effect at the time of the August 1980 blood test excluded such evidence at trial unless it exculpated the alleged father, and since the current law substantively changed this provision, it would be unfair to use such test against defendant. Although the trial court granted defendant's motion to strike, the blood test results were apparently allowed into evidence at the November 1982 trial after the State established a foundation for their admission.

A jury trial was held on November 9 and 10, 1982, during which defendant's trial counsel repeatedly violated the trial court's rulings *in limine* which barred references to (1) the fact that Trudy was a public aid recipient, (2) the fact that defendant's alleged child was not present in the courtroom, and (3) any physical description of defendant's alleged child. The trial court found this conduct to be contemptuous and fined defendant's trial counsel. Although the jury found in favor of defendant, the trial court allowed plaintiff's motion for a new trial on the ground that plaintiff was deprived of a fair trial due to the above-described misconduct.

On December 27, 1983, defendant filed a motion *in limine* which sought to exclude the August 1980 blood test on the same grounds al-

leged before the November 1982 trial. This motion was subsequently denied. On February 10, 1984, the State filed a motion for summary judgment on the issue of paternity. In support of this motion, the State submitted the affidavit of Mary Wallhermfechtal, the paternity testing supervisor at the laboratory where the August 1980 blood tests were analyzed. Ms. Wallhermfechtal therein stated that: (1) the blood was tested independently in duplicate with identical results; (2) using the standard formula recommended by the Joint Report of the American Medical Association and American Bar Association, defendant's paternity index was a 1063 (20 or greater is considered strong), constituting a 99.9% probability that defendant is the father of the child; and (3) that based upon these tests and the assumption that defendant had sexual intercourse with Ms. Brown during the period of possible conception, she formed the opinion that defendant is the child's biological father.

On February 13, 1984, defendant filed a notice to strike Ms. Wallhermfechtal's affidavit on the ground that the affidavit does not affirmatively show that she is competent to testify concerning the blood test results. Defendant also filed a memorandum in opposition to the summary judgment motions which was supported by affidavits from defendant and defendant's counsel. These affidavits stated, *inter alia,* that other men had sexual intercourse with the mother during the period of possible conception. The memorandum argued that blood tests should be given to the other possible fathers and that defendant should be given the opportunity to probe the reliability of the August 1980 blood test and the competency and qualifications of the witness testifying to such reliability. The State subsequently moved to strike all of defendant's affidavits because the facts sworn to therein would not be admissible at trial.

On September 27, 1984, the trial court determined: (1) that defendant's affidavits be stricken because no facts were presented which would constitute a legal defense, (2) that the affidavit of Ms. Wallhermfechtal be allowed, and (3) that the State's motion for summary judgment on the issue of paternity be granted. The defendant has perfected the instant appeal, alleging: (1) that the August 1980 blood test results should not be admitted into evidence because they were inadmissible under the law in effect at the time the blood test was taken, and (2) that summary judgment should not have been granted.

■ Summary judgment is appropriate only when the pleadings, depositions, admissions on file, and affidavits present no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ill. Rev. Stat. 1981, ch. 110, par. 2—1005(c); *Kolakowski*

*v. Voris* (1980), 83 Ill. 2d 388, 398, 415 N.E.2d 397, 402.

■■ The general rule that statutes will not be applied retroactively is ordinarily inapplicable to statutes relating to remedies and forms of procedure and which do not affect substantial rights. (*People v. Marshall* (1983), 114 Ill. App. 3d 217, 235-36, 448 N.E.2d 969, 981.) The use of the term "procedure" generally refers to rules of discovery, evidence, and privilege. (*Niven v. Siqueira* (1985), 109 Ill. 2d 357, 364, 487 N.E.2d 937, 941.) In the instant case defendant asserts that evidence obtained pursuant to the August 1980 blood test is expressly made inadmissible by the statute in effect at the time it was taken and that, as a consequence, the results of the test are not rendered admissible by the amendatory acts because such acts affect a substantial right. We agree. While it is correct that the State could have had a blood test conducted which would have been admissible as proof of paternity, we conclude that such fact does not alter the fact that the change in the evidentiary rule for the admission of blood tests would have affected a substantial right enjoyed by defendant at the time the test was taken. Consequently, we determine that the trial court erred in basing its award of summary judgment on the results of the August 1980 blood test.

■■■ In addition to the foregoing, it is not disputed that it is presumed that a child conceived during wedlock is legitimate; however, such presumption is rebuttable and may be overcome only by clear and convincing evidence. (Ill. Rev. Stat. 1985, ch. 40, par. 2505(b); *In re Adoption of McFadyen* (1982), 108 Ill. App. 3d 329, 335, 438 N.E.2d 1362, 1366, *cert. denied* (1983), 460 U.S. 1015, 75 L. Ed. 2d 486, 103 S. Ct. 1259.) Since neither a blood test of Joseph Pennington, who was Trudy's husband when the child in question was born, nor other proof that Joseph Pennington was not the father was presented, a genuine issue of material fact exists so as to preclude summary judgment. Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c); see *In re Adoption of McFadyen* (1982), 108 Ill. App. 3d 329, 335, 438 N.E.2d 1362, 1366; *Santiago v. Silva* (1980), 90 Ill. App. 3d 554, 559-60, 413 N.E.2d 139, 142-43.

For the foregoing reasons, the order of the circuit court granting summary judgment to plaintiff is reversed. The cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

HARRISON and WELCH,[1] JJ., concur.

---

[1]Justice Welch replaces Justice Jones, who retired after the case was taken under advisement.