THE STATE OF MINNESOTA *ex rel.* KATHLEEN M. GULLEY, Plaintiff-Appellee, v. EARL NORMAN CALDWELL, Defendant-Appellant.

Second District   No. 2—89—0766

Opinion filed June 1, 1990.

James E. Caldwell, of Caldwell & Black, of Chicago, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Miriam C. Goldsmith, Assistant State's Attorney, of counsel), for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, the State of Minnesota *ex rel.* Gulley, initiated the present paternity suit in the circuit court of Lake County, Illinois, on June 6, 1986, pursuant to the uniform reciprocal child support laws of both States. The State of Minnesota on behalf of relatrix, Kathleen M. Gulley, sought to establish that defendant, Dr. Earl Caldwell, was the father of April Gulley (d.o.b. April 27, 1984) and to require defendant to provide current child support and reimbursement for public assistance previously given for the benefit of the child.

After a jury trial, the trial court entered judgment on the jury's verdict finding that defendant was the natural father of April. The trial court reserved jurisdiction regarding issues of child support, costs and visitation. Defendant's premature appeal was dismissed by this court in an order filed April 27, 1989. Subsequent to the trial court's orders for child support dated June 30, 1989, defendant appealed raising three issues, which we have condensed into two issues: (1) whether there was insufficient evidence, including the results of genetic blood testing, to support a finding of paternity; and (2) whether defendant was improperly cross-examined regarding his failure to cooperate in submitting to court-ordered blood tests. We affirm.

At the outset, we note, for the second time, the inexcusably poor quality of defendant's brief, which does not comply with the requirements of our supreme court's rules. Defendant's appeal was initially dismissed for lack of jurisdiction by order of this court wherein

defendant was admonished regarding the inadequacy of his brief. Defendant again tests the patience of this court. Defendant's present brief contains a statement of facts that is argumentative and has inadequate citations to the record. The argument section also contains irrelevant arguments, malapropisms, and contentions unsupported by citation to the record. (See 113 Ill. 2d Rules 341(e)(6), (e)(7).) Additionally, defendant provides no appendix to his brief (see 107 Ill. 2d R. 342(a)). Although this court has inherent authority to dismiss the appeal for noncompliance with the rules, it is within our discretion to consider the merits of the appeal, and we do so here in view of the proper presentation of the facts in plaintiff's brief. See *Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 79.

According to the testimony adduced at trial, relatrix, Kathleen M. Gulley, resided in Chicago in 1972 when she first sought medical advice from defendant, Dr. Earl Caldwell. Kathleen consulted defendant several times in 1973 and then moved away from Chicago. She had no further contact with defendant until she returned to Chicago for her cousin's wedding scheduled for August 20, 1983.

On August 18, 1983, Kathleen stopped by defendant's office to renew her acquaintance with him. Kathleen was staying at the home of her mother, Doretha Latimore, and it was there that defendant stopped to pick up Kathleen on August 18 for a dinner date. At the conclusion of their date, Kathleen and defendant agreed to meet again the next evening, August 19, and defendant dropped Kathleen off at Latimore's home. On August 19, Kathleen went to defendant's office late in the afternoon and remained there until somewhere between 10 and 11 p.m., first talking and then later engaging in sexual intercourse with defendant. Kathleen and defendant went out for a late night snack before defendant dropped her off at her mother's home. Kathleen did not see defendant again socially after August 19, nor did she engage in further sexual intercourse with him.

Kathleen left Chicago on Sunday of the weekend after the wedding. In the third week of September 1983, Kathleen began to suspect that she was pregnant, and this pregnancy was later confirmed after medical examination. The pregnancy resulted in the birth of April Atwanda Gulley on April 27, 1984, after a 38-week gestation period. Kathleen believed that defendant was April's father because she did not engage in sexual intercourse with any other man during the 11-month period prior to April's birth.

Kathleen further testified that she contacted defendant several times by telephone and by letter during the pregnancy to discuss it with him. Kathleen stated that defendant denied his paternity of the

child throughout all conversations but the first. Shortly after April's birth, Kathleen wrote defendant to notify him but did not receive any response from him. Subsequently, Kathleen spoke with defendant once by telephone and later met with him twice in his office to discuss the child. Defendant refused Kathleen's suggestion that blood tests be taken.

On December 16, 1986, relatrix and the minor child appeared at the University of Minnesota Hospital and submitted to blood tests.

Doretha Latimore, Kathleen's mother, testified that Kathleen was staying with her in August 1983 when she came home for her cousin's wedding. Latimore met defendant at her home when he came by to call on Kathleen.

Plaintiff called defendant as an adverse witness for the limited purpose of establishing that defendant submitted to a court-ordered blood test on June 9, 1987.

Beverly Pohl testified for the plaintiff as a qualified expert witness in the area of genetic blood testing to establish paternity. Pohl reviewed all of the documents of Genetic Testing Institute of Atlanta, Georgia, related to the results of the blood tests conducted on blood samples drawn from Kathleen, April, and Earl. Based on her review of the documents and the chain of custody of the samples, Pohl opined that defendant could not be excluded as the natural father. Given certain assumptions, including the occurrence of actual intercourse during the period of conception, Pohl stated that the probability of paternity was 99.67%.

On cross-examination, when defense counsel tried to establish that the test documents were hearsay and that Pohl had not personally conducted the tests, the trial court gave a limiting instruction to the jury regarding the weight of opinion testimony and instructed the jury that the documents themselves were not substantive evidence.

Defendant testified that Kathleen did come to his office in August 1983 while he had other patients in the office. He had regular office hours between 1 p.m. and 8 p.m. on a daily basis. He denied that Kathleen was in his office on Friday August 19 or that he had sexual intercourse with her. Defendant denied having conversations with Kathleen after the birth of the child but later acknowledged receiving a letter from Kathleen in 1984 notifying him of the birth of the child.

Voncile Lockhart, defendant's office manager, testified regarding the usual procedures and hours of operation of defendant's office. She recalled Kathleen's visit on August 18, 1983. She did not see Kathleen in the office on August 19. She stated that defendant regularly took

her home after the office was closed, usually between 8 p.m. and 8:30 p.m.

Defendant was qualified as an expert witness and was allowed to testify only in the limited area of blood-testing procedures and protocol but was not allowed to testify regarding the interpretation of the results of HLA blood testing. Defendant's testimony essentially challenged the timing of the tests, urging that they must all be made at the same time to be reliable. This appeared to contradict Pohl's view that the tests need not be conducted contemporaneously.

On re-cross-examination, defendant acknowledged that he failed to appear for court-ordered testing on December 17, 1986. When defendant was asked whether he was ordered to appear for a blood test on June 9, 1987, under the threat of penalty, defense counsel objected that the order spoke for itself. Since the order was not offered into evidence, the trial court overruled the objection. On redirect examination, defendant explained that he had refused to take the test until the mother and daughter were brought to Chicago to take the test at the same time. He acknowledged that the State of Minnesota refused to bear the cost of the travel expenses for that purpose.

After the jury returned a verdict finding defendant to be the father of April, the trial court entered judgment. Defendant's motion for judgment notwithstanding the verdict or for a new trial was denied on March 28, 1988. The motion only generally alleged that the evidence was insufficient to support the verdict. Defendant has not provided this court with a report of that proceeding.

On appeal, defendant contends that the judgment is against the manifest weight of the evidence. Defendant first argues that, because the testimony of plaintiff conflicts with that of defendant, one effectively cancels the other. Defendant misunderstands the quantum and nature of proof required to show paternity. In a paternity case, the burden is on the plaintiff to establish paternity by a preponderance of the evidence, and the testimony of the plaintiff alone, if believed, is sufficient to support a finding of paternity. (*Virzint v. Beranek* (1983), 119 Ill. App. 3d 97, 99.) The determination of a preponderance of the evidence does not depend solely on the number of witnesses testifying for each side but, rather, is a function of the weight to be accorded to their testimony; this in turn depends on the credibility of the witnesses. (*People ex rel. Lyke v. Rucker* (1971), 2 Ill. App. 3d 113, 115.) The credibility of the witnesses and the weight to be afforded their testimony are for the trier of fact, and its findings will not be reversed unless they are clearly erroneous. (*Watkins v. Martin* (1983), 115 Ill. App. 3d 417, 422.) The trier of fact may re-

gard all the circumstances proved at trial and may give credence to one witness or the other if the facts and circumstances warrant it. *Lyke,* 2 Ill. App. 3d at 115.

■■ The alleged intercourse in a paternity case is frequently carried on clandestinely, and the complainant may be forced to prove her case by circumstantial evidence including testimony regarding the time, place, opportunity, and the relationship of the parties. *(People ex rel. Dalman v. O'Malley* (1963), 43 Ill. App. 2d 95, 99.) In the present case, relatrix testified that she met socially with defendant on August 18 and 19, 1983, and that she engaged in sexual intercourse with defendant on August 19 in his office. April was born on April 27, 1984, after a pregnancy of 38 weeks' duration. Relatrix stated that defendant was the only man with whom she had sexual relations during the probable period of conception. Doretha Latimore, the mother of relatrix, testified that she was introduced to defendant during the period of time in which the meetings with defendant took place. Defendant admitted that he had met with relatrix on August 18, 1983. He denied any further social meetings or any sexual intercourse with relatrix. Defendant's office manager corroborated his testimony regarding the usual office routines in place at that time. The manager acknowledged the presence of relatrix in the office on August 18 but denied that relatrix was there on August 19.

■■ ■ We believe that the detailed testimony presented by plaintiff, which included the time, place and circumstances surrounding the alleged intercourse and the birth of the child, was sufficient to support the jury's verdict independently of the expert's opinion. Contrary to defendant's contention, plaintiff's testimony was not "cancelled" merely because it was contradicted. Defendant wrongly argues that, because of this "cancellation," the only remaining evidence was the result of the paternity tests and this evidence was not conclusive of paternity because the probability of paternity rests on the assumption that intercourse actually took place. Based on plaintiff's testimony, the jury was entitled to believe that intercourse did, in fact, take place. The weight assigned to the expert's opinion was for the jury to determine in addition to the weight assigned to the testimony of the parties themselves. (See *Aroonsakul v. Flanagan* (1984), 124 Ill. App. 3d 626, 632.) It is clear that the test results were not the sole basis of the jury's verdict. Defendant has not shown that the verdict of the jury was clearly erroneous, and we will not reverse on that basis.

■■ ■ Defendant next argues that, during re-cross-examination, plaintiff's questions regarding defendant's refusal to appear for court-ordered blood tests were inflammatory and constituted inadmissible

evidence. (See *People ex rel. Aldworth v. Dutkanych* (1986), 112 Ill. 2d 505, 510; Ill. Rev. Stat. 1981, ch. 40, par. 1401 (repealed by Pub. Act 83—1372, §28, eff. July 1, 1985).) Although not brought to our attention by the parties, we first observe that the statutory rule regarding the inadmissibility of a defendant's refusal to take a paternity test has been repealed and has been replaced by section 11 of the Illinois Parentage Act of 1984 (Ill. Rev. Stat. 1985, ch. 40, par. 2511). (See *People ex rel. Brown v. Bloodworth* (1987), 155 Ill. App. 3d 901.) We believe that the issue of the inadmissibility of a party's refusal to submit to blood testing is mooted by the deletion of the relevant language from the Act. (See *Baudin v. City of Crystal Lake* (1989), 192 Ill. App. 3d 530, 538.) Second, the record shows that defendant did not specifically object to the line of questioning regarding his refusal to appear for blood tests. Rather, defendant merely objected to its repetition. Defendant further participated in the line of questioning by attempting to explain his reasons for the refusal. He also failed to specify this basis for error in his post-trial motion. We therefore find this issue not only moot but also waived, and we will not consider it. See *Rexroat v. Devine* (1987), 157 Ill. App. 3d 284, 288.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

INGLIS and WOODWARD, JJ., concur.